# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-01538-SCT

*MISSISSIPPI DEPARTMENT OF HUMAN*

*SERVICES*

*v.*

*JACKIE J. GUIDRY, SR.*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/11/2001 |
| TRIAL JUDGE: | HON. SEBE DALE, JR. |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GERALDINE JORDAN-CHAYER |
| ATTORNEY FOR APPELLEE: | ROBERT E. TAYLOR, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART ; REVERSED AND REMANDED IN PART - 10/31/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE McRAE, P.J., EASLEY AND CARLSON, JJ.

### CARLSON, JUSTICE, FOR THE COURT:

¶1. The Mississippi Department of Human Services brings this appeal after the chancellor dismissed its petition for contempt with prejudice based on a failure to prosecute. Finding that the chancellor erred in dismissing the petition with prejudice, we reverse his judgment to the extent that he dismissed Victory's amended petition and remand the case for further proceedings. Because the statute of limitations bars any action filed after February 1, 1998, seeking to recover child support obligations owed by Jackie, the chancellor's judgment dismissing the petition filed by DHS is affirmed.

### STATEMENT OF THE CASE

¶2. The Mississippi Department of Human Services ("DHS") filed a petition for contempt against Jackie J. Guidry, Sr. on November 22, 1999. The petition alleged Jackie's ex-wife, Victory Guidry, had received services of DHS under Title IV-D of the Social Security Act and DHS was authorized to bring this action against Jackie. DHS pled in its complaint that on June 7, 1977, a judgment was rendered against Jackie ordering him to pay "support." DHS also pled that as of February 22, 1999, Jackie was in arrears $22,

573.00 and DHS was entitled to a judgment against Jackie for that amount and any amount which had accrued since the action was filed. DHS also stated that Jackie should be held in contempt because he had failed to comply with the judgment. Additionally, DHS sought direction for Jackie to provide health insurance for the children, attorney's fees to DHS, and payment of all court costs. Jackie was served with process on January 13, 2000.

¶3. On February 29, 2000, Jackie filed his answer, asserting no defenses but denying all allegations of the complaint. At a hearing held on December 22, 2000, Jackie made an ore tenus motion to dismiss asserting that the action was barred by the statute of limitations. On May 16, 2001, the chancellor dismissed DHS's petition with prejudice for failure to prosecute. After DHS filed a motion for reconsideration, the chancellor denied the motion and entered the order of dismissal on September 6, 2001. On September 20, 2001, DHS timely filed its notice of appeal. DHS raises two issues which this Court will review:

> **I. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION BY DISMISSING THE AMENDED PETITION FILED ON MARCH 10, 1989.**

> **II. WHETHER THE CHANCELLOR ERRED BY FINDING JACKIE DID NOT WAIVE THE AFFIRMATIVE DEFENSE OF STATUTE OF LIMITATIONS WHEN JACKIE FAILED TO RAISE IT IN HIS ANSWER TO THE PETITION DATED NOVEMBER 22, 1999.**

## FACTS

¶4. On June 7, 1977, a final decree was entered ordering Jackie to pay child support in the amount of $250.00 per month to his four children, John Paul Guidry, born February 1, 1970, Jackie Joseph Guidry, Jr., born February 8, 1969, William Clinton Guidry, born October 30, 1963, and Roxanne Marie Guidry, born November 28, 1962. Child support was to be paid in the amount of $125.00 on the first and fifteenth day of each month. A petition for contempt was originally filed by Victory Guidry on January 9, 1989. The petition stated Victory was entitled to a judgment against Jackie for the amount of the arrearage and any child support which accrued since the petition was filed. On March 10, 1989, Victory amended the petition to show that as of December 31, 1988, Jackie was in arrears $16,333.00.

¶5. On April 10, 1989, Jackie filed an answer alleging that Victory was barred from seeking any relief because all of the children were emancipated. Jackie also claimed Victory was barred by the doctrine of laches because Victory had failed to bring any legal proceedings against him in the past to enforce his support obligation. This case was continued eighteen times until April 24, 1992, and then laid dormant for seven years and seven months, until DHS commenced its action.

¶6. On November 22, 1999, DHS filed its first petition for contempt, asserting that because Victory was a recipient of services under Title IV-D of the Social Security Act, DHS was authorized to bring this action. On January 28, 2000, Jackie filed a motion for continuance and time, and a hearing was scheduled for March 24, 2000. Jackie filed his answer on February 29, 2000, which denied all allegations of the complaint but did not assert any affirmative defenses.

¶7. In response to Jackie's ore tenus motion requesting all necessary parties be joined as the children were all emancipated, all four children signed waivers stating that any arrearage due was owed to their mother, Victory. The hearing was scheduled for September 22, 2000, but was rescheduled for December 22,

2000, after Jackie filed a motion for continuance. At the hearing Jackie made an ore tenus motion to dismiss, asserting that the action was barred by the statute of limitations. On May 16, 2001, the chancellor filed a memorandum opinion and order dismissing the petition stating that the original petitions filed in 1989 had been abandoned and were dismissed due to failure to prosecute and that the statute of limitations barred any debt owed by Jackie on February 1, 1998.[(1)] On May 25, 2001, DHS filed a motion for reconsideration which was denied, and the order of dismissal was entered on September 6, 2001.

### DISCUSSION

### I. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION BY DISMISSING THE AMENDED PETITION FILED ON MARCH 10, 1989.

¶8. DHS argues a chancellor does not have the authority to unilaterally dismiss a petition for lack of prosecution. DHS further states there was no motion pending, no notice was given and the issue was not heard with its consent. DHS also alleges it was an abuse of discretion for the chancellor to dismiss for lack of prosecution based on the facts of the case. Jackie contends the chancellor was well within his power to order a dismissal based on lack of prosecution.

¶9. "[T]he power to dismiss an action for want of prosecution is part of a trial court's inherent authority." *Am. Tel. & Tel. Co. v. Days Inn of Winona*, 720 So. 2d 178, 180 (Miss. 1998) (quoting *Wallace v. Jones,* 572 So.2d 371, 375 (Miss. 1990)). This power is "a means necessary to the orderly expedition of justice and the court's control of its own docket." *Id.* (quoting *Watson v. Lillard,* 493 So.2d 1277, 1278 (Miss. 1986)) (citing *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

¶10. The power to dismiss for failure to prosecute can be exercised sua sponte where a motion by a party is lacking. *Watson*, 493 So. 2d at 1278 (citing *Link,* 370 U.S. 626). In pertinent part, Miss. R. Civ. P. 41 provides:

> (b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him....Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any other dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

The United States Supreme Court has interpreted Fed. R. Civ. P. 41(b) to allow involuntary dismissals by federal courts where there was no motion by the defendant. *Link*, 370 U.S. at 630. The Supreme Court held:

> We do not read Rule 41(b) as implying any such restriction. Neither the permissive language of the Rule--which merely authorizes a motion by the defendant--nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

*Id.* at 630-31. The federal rule is similar to our state rule.

¶11. The Supreme Court also discussed the fundamental due process requirements of being heard and of notice being given of such a dismissal. *Link*, 370 U.S. at 632. The Court stated that every order entered without notice given did not violate due process. *Id.* "The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct." *Id.* The Court also found "when circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting." *Id.* at 633.

¶12. On the sole issue of whether a trial court may unilaterally dismiss a petition for lack of prosecution, this Court holds that although Jackie had not filed a motion to dismiss, the trial court was within its discretion to raise sua sponte the issue of dismissing the petition for lack of prosecution. This case, which was originally set for trial on September 28, 1989, was continued eighteen times until April 24, 1992. After 1992, no action was taken until DHS filed its petition in 1999, seven years and seven months later. This matter had been on the docket for over ten years before DHS filed its petition. While a trial court would ordinarily be acting within its discretion when dismissing a petition for lack of prosecution, we find under the facts and circumstances peculiar to this particular case that the trial court abused its discretion by not conducting a hearing to allow each side the opportunity to argue the merits of the motion to dismiss for lack of prosecution.

¶13. It has been well established in reviewing a trial court's decision under Rule 41(b), this Court may only reverse if it finds the trial court abused its discretion. *Am. Tel. & Tel.*, 720 So. 2d at 180; *Wallace*, 572 So. 2d at 375 (citing *Morris v. Ocean Sys., Inc.*, 730 F.2d 248, 251 (5th Cir. 1984)); *Watson*, 493 So. 2d at 1279. Because the law favors a trial of the issues on the merits, a dismissal for lack of prosecution is employed reluctantly. *Am. Tel. & Tel.*, 720 So. 2d at 180; *Watson*, 493 So. 2d at 1278.

> There is no set time limit on the prosecution of an action once it has been filed, and dismissal for failure to prosecute will be upheld only "where the record shows that a plaintiff has been guilty of dilatory or contumacious conduct." *Watson*, 493 So.2d at 1279. This Court is mindful of the fact that "dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases." *Wallace*, 572 So.2d at 376 (citing *Rogers v. Kroger Co.*, 669 F.2d 317 (5th Cir. 1982)). What constitutes failure to prosecute depends on the facts of the particular case. *Id.*

*Am. Tel. & Tel.*, 720 So. 2d at 180-81.

¶14. In *Am. Tel. & Tel.*, this Court adopted the holding of the Fifth Circuit which established that "Rule 41(b) dismissals with prejudice will be affirmed only upon a showing of 'a clear record of delay or contumacious conduct by the plaintiff,' ..., and where lesser sanctions would not serve the best interests of justice." *Id.* at 181 (citing *Rogers*, 669 F.2d at 320)(quoting *Pond v. Braniff Airways, Inc.*, 453 F.2d 347, 349 (5th Cir. 1972)). *See also McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 556 (5th Cir. 1981); *Gray v. Fid. Acceptance Corp.*, 634 F.2d 226, 227 (5th Cir. 1981); *Luna v. Int'l Ass'n of Machinists & Aerospace Workers*, 614 F.2d 529, 531 (5th Cir. 1980). The Fifth Circuit also identified several aggravating factors which include "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and

whether the delay was the result of intentional conduct." ***Rogers***, 669 F.2d at 320.

¶15. Applying these standards, this Court must first determine whether the record reflects a clear showing of delay or contumacious conduct by the plaintiff. The plaintiff listed on the 1989 petition was Victory Guidry. The record indicates the petition was continued eighteen times, but the record does not indicate the reasoning behind these continuances or on whose motion these continuances were granted. However, all eighteen orders were presented to the chancellor by counsel for Victory. There is also no clear record as to exactly what transpired during the seven years and seven months after the final continuance and before DHS filed its petition. After reviewing the record, this Court is unable to find contumacious conduct by the plaintiff, Victory Guidry, which would justify an involuntary dismissal.

¶16. Next, this Court must determine if lesser sanctions would have better served the interests of justice.

> Where there is no indication in the record that the lower court considered any alternative sanctions to expedite the proceedings, appellate courts are less likely to uphold a Rule 41(b) dismissal. *See, e.g.*, ***Rogers***, 669 F.2d at 321-22; ***McGowan***, 659 F.2d at 557; ***Burden v. Yates***, 644 F.2d 503, 505 (5th Cir. 1981). "Lesser sanctions include 'fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings.'" ***Wallace***, 572 So.2d at 377 (quoting ***Rogers***, 669 F.2d at 321).

***Am. Tel. & Tel.***, 720 So. 2d at 181-82. There is no indication in the record that the trial court considered other sanctions. Also, because DHS had recently filed a petition in the same action, it is not clear that other sanctions would have been futile in expediting the proceedings.

¶17. Because it is not clear from the record that this case fulfills either of the requisite factors for dismissal under Rule 41(b), this Court also considers the aggravating factors as set out in ***Rogers***. As previously stated, there is nothing in the record to suggest that Victory Guidry, as opposed to her counsel, was responsible for any of the delays. Next, there would be little, if any, prejudice to Jackie, by proceeding to trial. Finally, there is nothing in the record to indicate the delay was an intentional attempt to abuse the judicial process. There is no indication that the delay was due to any of the aggravating factors.

¶18. Because there was no contumacious conduct by the plaintiff, Victory, no alternative sanctions were considered and no aggravating factors were present, we find the chancellor abused his discretion in dismissing the petition with prejudice. The judgment is reversed, and the case is remanded for further proceedings.

### II. WHETHER THE CHANCELLOR ERRED BY FINDING JACKIE DID NOT WAIVE THE AFFIRMATIVE DEFENSE OF STATUTE OF LIMITATIONS WHEN JACKIE FAILED TO RAISE IT IN HIS ANSWER TO THE PETITION DATED NOVEMBER 22, 1999.

¶19. DHS next argues Jackie waived his defense of statute of limitations when he failed to raise the defense in his answer. Jackie contends that though he did file responsive-pleadings, no answer was required under Miss. R. Civ. P. 12(b). Because no answer was required, Jackie argues his affirmative defenses could have been properly pled at any time.

¶20. An affirmative defense, such as a statute of limitations, is waived if not raised by a pleading. Miss. R. Civ. P. 12(b). However, this rule only applies when a responsive pleading is required. Rule 12(b) states in

pertinent part:

> If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, he may assert at the trial any defense in law or fact to that claim for relief....

Pursuant to Miss. R. Civ. P. 81(d)(2) & (4), no answer is required in a petition for contempt based on unpaid child support. Nevertheless, Jackie's counsel did file an answer, but did not raise the affirmative defense of statute of limitations. However, at the hearing, Jackie made an ore tenus motion to dismiss the petition as being barred by the statute of limitations.

¶21. In a recent case handed down by the court of appeals, that court held there was no waiver for failure to plead an affirmative defense when no pleading was required. ***Brown v. Brown***, 822 So. 2d 1119 (Miss. Ct. App. 2002). The facts of ***Brown*** are remarkably similar to the case sub judice. The Browns were divorced in 1979, and Mr. Brown was ordered to pay child support. *Id.* at 1120. In February 2000, Mrs. Brown filed a motion for contempt alleging Mr. Brown had failed to pay any child support since the 1979 decree. *Id.* The chancellor awarded Mrs. Brown $54,697.66 in unpaid child support. *Id.* at 1121.

¶22. The Court of Appeals held that because no answer was required to the petition for contempt, the answer, although filed by Brown, was not a required pleading. *Id.* "We find no waiver for failure to plead an affirmative defense when no pleading is required." *Id.* Because the affirmative defense of statute of limitations had not been waived, the claim for the older child was barred. *Id.* But, the daughter's claim was viable because she had not yet reached her twenty-eighth birthday. *Id.* at 1121-22.

¶23. This Court finds the affirmative defense of statute of limitations was not waived here because, although Jackie filed an answer, such pleading was not required. The chancellor was correct in finding Jackie had the right to raise his defenses at any stage, including at trial. Therefore, Jackie's defense of statute of limitations will serve as a bar to any claims filed after February 1, 1998, seven years after his youngest child reached the age of 21.

¶24. DHS also contends that its petition, which was filed on November 22, 1999, amended the original complaint filed on January 9, 1989, and was not an original pleading in this matter. However, the pleading was not styled as an amendment, nor was it pled as such. New process was served on Jackie, which would not have been necessary if the chancellor had continuing jurisdiction under the original complaint. Also, DHS failed to obtain permission from the chancellor to amend its petition. Miss. R. Civ. P. 15 states in part:

> (a) Amendments. A party may amend his pleading as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within thirty days after it is served....Otherwise a party may amend his pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires.

¶25. This Court concludes the chancellor was correct in finding the petition of November 1999 stood alone and did not revive the prior 1989 petitions. Therefore, this new pleading is barred by the statute of limitations.

## **CONCLUSION**

¶26. Although the chancellor had the authority to consider a sua sponte dismissal of the claim for lack of

prosecution, he abused his discretion in dismissing the petition with prejudice for lack of prosecution. There was no finding of contumacious conduct by Victory, nor were alternative sanctions considered. Therefore, we reverse the judgment of the chancellor to the extent that it dismissed Victory's amended petition and remand the case for further proceedings consistent with this opinion. On remand, the chancellor shall consider the amended petition filed by Victory on March 10, 1989, in determining whether Jackie is in contempt for any amount of child support or arrearage. Because this case did not require a responsive pleading, Jackie did not waive his affirmative defense of statute of limitations; therefore, the chancellor shall also consider any defenses which Jackie is entitled to raise. Because the statute of limitations bars any action filed after February 1, 1998, seeking child support obligation owed by Jackie, the chancellor's judgment is affirmed to the extent that it dismissed the petition filed by DHS.

¶27. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ AND GRAVES, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY.**

1. The seven-year statute of limitations set forth in Miss. Code Ann. § 15-1-59 (1995) began to run when the youngest child reached the age of 21 on February 1, 1991. Therefore, the seven-year statute of limitation expired on February 1, 1998.