# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01438-SCT

*TERRI WILSON*

*v.*

*SHANE NANCE*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/09/2007 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| COURT FROM WHICH APPEALED: | BENTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BRANDON SCOTT LESLIE |
| ATTORNEY FOR APPELLEE: | WENDELL H. TRAPP, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 01/29/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    The underlying dispute in this case involves a car accident and alleged injuries that resulted from the accident.  On the first day of the trial, after the jury had been selected, plaintiff's counsel informed the trial court that the plaintiff was incompetent and requested a continuance so that a guardian could be appointed.  After hearing testimony on the matter and arguments from both parties, the trial court granted the continuance and declared a mistrial.  The court also ordered the plaintiff to complete guardianship proceedings in chancery court within ninety days.  The plaintiff failed to do so.  The trial court subsequently

granted the defendant's motion to dismiss because the plaintiff failed to comply with the court's order. Aggrieved by the dismissal of her case, the plaintiff appeals to this Court.

### FACTS

¶2. On February 26, 2000, Terri Wilson and Shane Nance were involved in a car accident. According to the complaint, Nance was driving the car and Wilson was his passenger. Wilson testified at a deposition that the accident occurred during a rainstorm and that the car hit a puddle of water, causing the car to leave the road and flip over several times. Wilson also testified that both she and Nance had consumed alcohol that day and that neither of them was wearing a seatbelt at the time of the accident.

¶3. Wilson brought suit against Nance for personal injuries on February 25, 2003. In the complaint, Wilson alleged that she suffered various injuries, including bruises and contusions, pain and mental anguish, and loss of wage-earning capacity. At her deposition, Wilson testified that she was "totally disabled, permanently disabled" because of the accident, that the accident caused her to suffer from mental health problems such as anxiety attacks, crying spells, reclusiveness, paranoia, and uncontrolled cursing, and that she had been prescribed medication for these conditions. In his answer, Nance admitted that the accident had occurred but denied fault.

¶4. The trial was initially scheduled for October 2005, but was rescheduled for June 2006, and then October 2006. On October 4, 2006, the trial began and a jury was selected. Following the jury selection, during a recess, Wilson's counsel informed the trial court that she was incompetent to proceed with the trial and required a guardian. Wilson's counsel requested a continuance. Nance opposed this motion. The record does not include a

2

transcript of the trial on October 4, 2006, but the hearing is summarized in an order from the trial court. According to this order, the trial court allowed Wilson's mother, Sandra Kay Wilson (Mrs. Wilson), to testify that

> Terri Wilson had short term memory problems, that she cries a great deal, that her answers to questions make no sense, that she often goes for periods of time without sleep, and that she becomes very emotional . . . that Terri Wilson needed to have a guardian appointed, and . . . that this day was the first day that such a communication had been made to [her by] counsel for Plaintiff.

Mrs. Wilson also testified that she was not medically-trained and that Wilson was not, at that time, the ward of a guardian or conservator. She further stated that, although Wilson had provided discovery responses and had already testified at a deposition, there were inaccuracies in her deposition testimony. Lastly, she stated that Wilson had been on medication since the accident and had been seeing a psychiatrist, Dr. Rayudu, for treatment. Nance then informed the trial court that, based on the discovery provided by Wilson, her last appointment with Dr. Rayudu was in June 2002, before the complaint was filed.

¶5. Based on the testimony of Mrs. Wilson, the trial court granted a continuance and declared a mistrial, explicitly stating that the "sole reason for declaring a mistrial" was so that the plaintiff could have a guardian appointed. The trial court ordered Wilson to complete guardianship proceedings in chancery court within ninety days of October 4, 2006. The trial court further stated that "[i]n the event that Plaintiff fails to proceed as directed, or in the event that a guardian is not appointed for Plaintiff, the Court shall dismiss this cause of action with prejudice."

¶6. After the court declared a mistrial, Nance submitted documents related to Wilson's motion for a continuance, including Wilson's deposition, some of the discovery provided by

3

Wilson, and two documents from Wilson's medical records. The medical documents included a psychiatric update by Wilson's psychiatrist, Dr. Rayudu, dated June 10, 2002, which stated that Wilson's "case will be closed as of now."

¶7. On November 15, 2006, Mrs. Wilson filed a petition for a conservatorship with the chancery court, citing Wilson's "organic brain damage and post dramatic [sic] syndrome." On December 18, 2006, Wilson filed a motion for additional time to complete the conservatorship.

¶8. On January 29, 2007, Nance filed a motion to dismiss based on Wilson's failure to comply with the court's order of November 3, 2006. Wilson responded to the motion to dismiss by stating that the petition for conservatorship was filed within the ninety-day period, that the proceedings had progressed toward a final hearing on March 9, 2007[1], and that Wilson had timely filed a motion for additional time to complete the proceedings. Wilson also asserted that she had "acted in good faith with the Court's Order" and that the delay had not prejudiced Nance.

¶9. The trial court held a hearing on the motion to dismiss, and heard arguments from both sides. Nance argued that Wilson clearly did not comply with the court's order and that a conservatorship is different from a guardianship. Nance also claimed that the testimony from Mrs. Wilson was not supported by the discovery provided by Wilson, and that Wilson never raised the issue of incompetence prior to October 4, 2006, despite the fact that she had not

---

[1] Mrs. Wilson was not officially appointed Wilson's conservator until a decree was entered on March 16, 2007.

4

been treated for any mental health problems since 2002. Nance argued that a guardianship was not necessary and that Wilson had requested a continuance purely as a delay tactic.

¶10. Wilson claimed that on the day of trial, Mrs. Wilson informed plaintiff's counsel that Wilson was unable to proceed with the trial, and that counsel then brought it to the court's attention. Wilson maintained that she and her counsel "sure as heck tried" to comply with the court's order, that the petition for a conservator was filed within two weeks of the entry of the court's order declaring a mistrial, and that a conservatorship is essentially the same as a guardianship. Wilson also submitted letters from two doctors from the same medical practice, which stated, in identical language, that Wilson had been treated "in the past" for post-traumatic stress disorder stemming from an accident, that she has difficulty handling stress, and that her mother should handle her financial and medical affairs. However, Wilson's attorney admitted that he did not have documentation that Wilson had consulted with these doctors since 2002.

¶11. At the conclusion of the hearing, the trial court dismissed the case with prejudice based on Wilson's failure "to comply technically and with the spirit of" the order. The trial court stated on the record at the conclusion of the hearing that

> I . . . certainly don't doubt that the attorney didn't know his clients [sic] mental state but I was concerned that the attorney should have known his clients [sic] mental state and had brought it to the court's attention before we were in the process of picking a jury but that didn't happen and my paramount concern at that time was making sure that the interest of the parties was protected, in this case the interest of the plaintiff and seen [sic] that there [sic] right to trial was preserved.

In the Order of Dismissal with Prejudice, the trial court noted that case had been continued twice before being scheduled for trial on October 4, 2006. The trial court stated that a

5

guardianship was never established and that the conservatorship was not completed until after the ninety-day period had elapsed. The trial court emphasized that it had given clear instructions to Wilson when it "took extraordinary action in declaring the mistrial." The trial court found that although there was "some effort made," Wilson did not diligently pursue the establishment of a guardianship and did not provide any justification for her failure to do so. The trial court also noted that Wilson did not provide any documentation supporting Mrs. Wilson's testimony that Wilson had received any psychiatric treatment after the initiation of the lawsuit.

¶12. Wilson subsequently filed a motion to reconsider, which was denied by the trial court. Wilson timely appealed to this Court.

## **ANALYSIS**

¶13. On appeal, Wilson argues that the trial court abused its discretion in dismissing her case with prejudice. Wilson claims that the failure to comply with the court's order was not her fault and was not the result of dilatory or contumacious conduct. Wilson also asserts that the failure to comply did not prejudice Nance and that less drastic sanctions should have been imposed, such as taxing Nance's fees and costs to Wilson.

¶14. Nance maintains that because Wilson failed to comply with the trial court's order, it was well within the trial court's discretion to dismiss the case pursuant to Mississippi Rule of Civil Procedure 41(b). Nance presents several arguments comparing Wilson's failure to comply with the court's order to the failure to timely serve a summons, the failure to prosecute a case, and the failure to comply with a rule of discovery. Nance also asserts that Wilson, and not her attorney, caused the delay and that Nance has suffered prejudice as a

6

result. Nance emphasizes that Wilson was on notice from the trial court that her failure to comply with the court's order would result in dismissal of the case with prejudice, and that the trial court granted a continuance on the explicit condition that Wilson obtain a guardian within ninety days. Nance also casts doubt on the veracity of the testimony given by Mrs. Wilson in order to obtain the continuance. Finally, Nance contends that it would be unjust to reverse the trial court's dismissal because Wilson offered questionable testimony in order to obtain a continuance and then failed to comply with the court's order granting the continuance. Thus, he argues, the trial court acted properly in dismissing the case based on Wilson's noncompliance.

¶15. Mississippi Rule of Civil Procedure 41(b) states, in relevant part:

> Involuntary dismissal: effect thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.

Miss. R. Civ. P. 41(b). This Court has held that Rule 41(b) involves court orders that are "necessary for preparation of trial litigation as well as the trial itself and its procedure insofar as it relates to the rules of civil procedure." *Wallace v. Jones*, 572 So. 2d 371, 377 (Miss. 1990). This Court reviews Rule 41(b) dismissals for an abuse of discretion. *See, e.g.*, *Miss. Dep't of Human Servs. v. Guidry*, 830 So. 2d 628, 632 (Miss. 2002) (citations omitted); *Wallace*, 572 So. 2d at 375 (citations omitted).

¶16. This Court has further elaborated that "dismissal for failure to comply with an order of the [trial] court is appropriate only where there is a clear record of delay or contumacious conduct and lesser sanctions would not serve the best interests of justice." *Wallace*, 572 So. 2d at 376 (citations omitted). The reasoning behind this requirement is that "dismissal with

7

prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim." *Wallace*, 572 So. 2d at 376. Thus, "dismissals with prejudice are reserved for the most egregious cases." *Wallace*, 572 So. 2d at 376.

¶17. In addition to the clear record of delay and inadequacy of lesser sanctions, this Court has noted that Rule 41(b) dismissals are often affirmed in cases where there is at least one "aggravating factor" present. *Hoffman v. Paracelsus Health Care Corp.*, 752 So. 2d 1030, 1034 (Miss. 1999). Aggravating factors include "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct." *Hoffman*, 752 So. 2d at 1034.

¶18. The trial court's order requiring Wilson to complete proceedings to establish a guardianship within ninety days of the mistrial certainly falls under the purview of Rule 41(b). It is an order necessary to the progression of the trial. *See Wallace*, 572 So. 2d at 377. If Wilson was incompetent to proceed on her own and required a guardian, then a guardian had to be appointed before continuing with the trial. Since Rule 41(b) applies to the trial court's order, this Court must determine whether this case involves a record of delay or contumacious conduct, whether lesser sanctions could have served the best interests of justice, and whether any aggravating factors are present.

***Delay or Contumacious Conduct***

¶19. There are few cases from this Court regarding Rule 41(b) dismissals, but one case provides some guidance as to dilatory or contumacious conduct. In *Mississippi Department of Human Services v. Guidry*, 830 So. 2d 628 (Miss. 2002), this Court did not find a record

8

of delay or contumacious conduct by the plaintiff. The case had been pending for eleven years, had been continued eighteen times, and was dormant for almost eight years. *Guidry*, 830 So. 2d at 630-31. However, this Court found that the record did not reflect the reasons for the continuances or the long delay following the continuances. *Id.* at 633. Therefore, this Court concluded that there was no showing of contumacious conduct by the plaintiff. *Id.*

¶20. In this case, the record reflects that the complaint was filed in February 2003 and the case had been scheduled for trial for October 2005. The trial was rescheduled for June 2006, and again for October 2006. On October 4, 2006, after the jury had been chosen, Wilson's attorney informed the trial court that it had just been brought to his attention that his client was incompetent and requested a continuance so that a guardian could be appointed. The trial court then heard testimony from Mrs. Wilson. Based on this testimony, the trial court granted a continuance, declared a mistrial, and ordered Wilson to have the guardianship proceedings completed within ninety days.

¶21. It is uncontested on appeal that Wilson did not complete guardianship proceedings within ninety days. Not only did Wilson not complete guardianship proceedings within ninety days, but she did not even initiate guardianship proceedings, seeking a conservatorship instead. Although conservators and guardians have overlapping duties and can serve similar functions, the trial court explicitly ordered that Wilson complete guardianship proceedings, and no reason is given as to why a conservatorship was sought instead. *See* Miss. Code Ann. § 93-13-121 (Rev. 2004). Moreover, the establishment of a guardianship requires a showing of incompetence that is not required to establish a conservatorship. *Harvey v. Meador*, 459 So. 2d 288, 292 (Miss. 1984). The record reflects that Mrs. Wilson filed a petition for

9

conservatorship six weeks after the mistrial was declared. Before the expiration of the ninety-day period, Wilson filed a motion for additional time to complete the conservatorship proceedings. A conservatorship was established on March 16, 2007, more than two months after the expiration of the ninety-day period.

¶22. This Court finds that the record reflects dilatory and contumacious conduct by Wilson. Although the overall delay in the proceedings was not as lengthy as in *Guidry*, and although, as in *Guidry*, the record here does not reveal the reasons for all the continuances and delays, the facts in *Guidry* are distinguishable. First, we note that *Guidry* concerned a Rule 41(b) dismissal for failure to prosecute, whereas this case involves a Rule 41(b) dismissal for failure to comply with a court order.

¶23. More important, however, is that the trial in this case had been continued for one year without any indication that Wilson was in need of a guardian. Although the record in this case does not indicate the reasons for the continuances, the fact that Wilson's need for a guardian was not raised with the court until after a jury was selected suggests dilatory or contumacious conduct. The record does not support Wilson's contention that her psychiatric condition underwent critical, regressive changes during the days or weeks preceding the October 4, 2006, trial date such that a guardianship could not have been requested or established earlier. In fact, Mrs. Wilson's description of Wilson's psychiatric problems on October 4, 2006, (as conveyed in the court's order granting a mistrial[2]) is not as acute as

---

[2] Unfortunately, the transcript from the October 4, 2006, trial is not included in the record on appeal, so we do not know the exact testimony of Mrs. Wilson regarding the reasons Wilson required a guardian, and why the issue was not raised at any point before the jury was selected. This Court has held that the appellant is responsible for ensuring

Wilson's own description of her mental health issues at her deposition almost four years prior. Furthermore, the documents provided during discovery and filed with the chancery court during the conservatorship proceedings indicate that Wilson's last appointment with her psychiatrist took place in June 2002. The two identical letters submitted by her physicians also do not indicate that her condition changed during the period preceding the trial. And yet, neither Wilson nor her mother informed Wilson's attorney of a possible incompetence issue until after a jury had been seated.

¶24. The medical documents provided and the lack of medical documentation regarding treatment received after 2002 cast serious doubt on the truthfulness of Mrs. Wilson's testimony. In addition, her lack of medical training also raises concerns about the basis of her testimony that Wilson required a guardian, given that Wilson provided no documentation of medical treatment administered after the filing of the lawsuit. Indeed, the trial court's Order of Dismissal with Prejudice noted that the absence of medical records indicating that Wilson had been treated after 2002 was "not consistent" with the testimony of Mrs. Wilson. And even if it were true that Wilson's mental health deteriorated shortly before the trial date, no explanation is presented in the record or on appeal as to why the issue could not have been raised earlier – during the days before October 4, 2006, or at least before a jury was selected. We note that Mrs. Wilson should have been aware of any changes in Wilson's physical and mental health given that Wilson lives with her and spends most of her time at home.

---

that the record includes all necessary support for his or her claims on appeal. ***Oakwood Homes Corp. v. Randall***, 824 So. 2d 1292, 1293 (Miss. 2002) (citing ***Shelton v. Kindred***, 279 So. 2d 642, 644 (Miss. 1973)).

¶25. As for the delay in obtaining a conservatorship, although the reasons for the continuances in chancery court are also not clear from the record, it is inescapable that Mrs. Wilson did not initiate conservatorship proceedings in chancery court until six weeks after the mistrial was declared. Wilson admits in her appellate brief that the trial court orally ordered the establishment of a guardianship within ninety days of October 4, 2006. Thus, on October 4, 2006, Wilson and her mother were aware of this requirement and the sanction for failing to comply. Wilson provides no explanation for the six-week delay in filing a petition for a conservator in chancery court beyond stating that there was confusion regarding the proper papers to file.

¶26. The record as a whole reflects a clear pattern of delay or contumacious conduct. *See Wallace*, 572 So. 2d at 376 (citations omitted).

### *Lesser Sanctions*

¶27. This Court has stated that a case should be dismissed pursuant to Rule 41(b) only if lesser sanctions are inadequate. *Wallace*, 572 So. 2d at 377 (citations omitted). Lesser sanctions have been described as "fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." *Wallace*, 572 So. 2d at 377 (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982)). This Court has also noted that if the record does not reflect that the trial court considered alternative sanctions, then a Rule 41(b) dismissal is less likely to be affirmed. *Hoffman v. Paracelsus Health Care Corp.*, 752 So. 2d 1030, 1035 (Miss. 1999); *Guidry*, 830 So. 2d at 633 (citations omitted).

¶28. In this case, the trial court's orders reflect that lesser, alternative sanctions were considered. The trial court's order granting a continuance assessed the costs of the October 4, 2006, hearing to Wilson and stated that "[t]he Court further will consider additional relief and parameters with respect to this case, including, but not limited to, possible limitations upon further discovery or proof." The trial court's Order of Dismissal with Prejudice stated that "[t]he Court further finds that dismissal under the circumstances presented by this case is proper in that appropriate relief cannot be substantially achieved by the use of less drastic measures." The trial court clearly contemplated lesser sanctions and concluded that dismissal with prejudice was required to serve the best interests of justice. The record also indicates that the sanction of dismissal with prejudice is not unreasonable in light of the extraordinary relief granted by the trial court on the day of trial, after the jury had been selected.

¶29. Based on the language in the trial court's orders, we cannot say that the trial court abused its discretion in choosing to dismiss the case rather than imposing a lesser sanction on Wilson or plaintiff's counsel.

***Aggravating Factors***

¶30. As stated above, Rule 41(b) dismissals usually involve an aggravating factor, such as the plaintiff's responsibility for the delay, the actual prejudice to the defendant, or the fact that intentional conduct caused the delay. ***Hoffman***, 752 So. 2d at 1034. Few cases from this Court address aggravating factors and describe their parameters, but ***Hoffman*** provides some guidance. In ***Hoffman***, this Court found that no aggravating factors were present. ***Id.*** at 1035. More specifically, this Court indicated that plaintiff's counsel admitted to being less

13

than diligent in his representation of the plaintiff because of personal reasons. *Id.* Here, however, there is evidence supporting at least one aggravating factor.

***Responsibility of the Plaintiff***

¶31. Wilson argues on appeal that she is a "blameless client" and that any delay that may have resulted was not attributable to her. Wilson's appellate brief states:

> The undersigned further asserts that she is a "blameless client", and if any party is liable for the delay in complying with the Court's Order, it is not her. The Appellant contends that she acted in good faith in timely filing the Petition to Appoint a Conservator, had established the Conservatorship by the time the Court had dismissed the action, and the delay did not prejudice the Defendant or the Court. Matters brought before any Court, either Circuit or Chancery, are often and regularly delayed for reasons outside the Plaintiff's control. As has been stated, this matter was set in the Chancery Court of Benton County, Mississippi on three dates prior to the final disposition date. The Plaintiff/Appellant can hardly be blamed for the delay, and she is in fact a blameless client.

This is the full extent of the argument presented on appeal that Wilson should not be blamed for any dilatory or contumacious conduct. This argument is not supported by the record.

¶32. It is possible that Wilson's mental health deteriorated shortly before the trial despite the fact that there are no medical documents to support that contention. It is possible that Wilson's mental health prevented her from promptly informing her attorney that she might be incompetent to proceed with the trial – despite the fact that the trial had been continued for a year before October 4, 2006, and despite the fact that Mrs. Wilson probably could have informed the attorney sooner. It is quite likely that the decision to file for a conservatorship rather than a guardianship is attributable to Wilson's counsel and not Wilson herself. And it is also possible that the delay in initiating conservatorship proceedings and the delay from the continuances in chancery court were not Wilson's fault.

14

¶33. However, none of these possibilities is supported by the record, and only the last possibility is even asserted on appeal. To be clear, there is simply no evidence in the record showing that Wilson was actually incompetent before or at the time of trial. In 2001 and 2002, Wilson had been treated by a psychiatrist, Dr. Rayudu, who diagnosed her with major depression with moderate to severe anxiety and post-traumatic stress disorder. Assuming that such a diagnosis is sufficient for a chancery-court finding of incompetence, Wilson or her mother could have raised the issue of incompetence with the trial court or filed a petition for a guardianship in chancery court at any time before the first day of trial. They did neither. Dr. Rayudu closed Wilson's case on June 10, 2002, before the complaint was filed, because of Wilson's purported desire to follow up at the Ashland Clinic. There is no medical documentation of Wilson's mental health after the filing of the suit. She has not presented any IQ test, any updated psychiatric evaluation, or any expert medical testimony demonstrating that she was indeed incompetent at the time the trial commenced.

¶34. Although the chancery court subsequently established a conservatorship for Wilson, this Court has held that "the distinguishing feature of conservatorship[s] from guardianships lies in part in the lack of necessity of an incompetency determination or the existence of a legal disability for its initiation." *Harvey v. Meador*, 459 So. 2d 288, 292 (Miss. 1984). A conservatorship, which the Legislature originally intended for "older adults in our society who possess assets in need of protective services," may be established for someone of advanced age, with a physical incapacity, or with mental weakness. *Id.* at 291. Again, no transcript of the chancery court conservatorship proceedings is included in the record, so this Court does not know the basis of the chancery court's decision to establish a conservatorship

15

for Wilson. Since there is no evidence – direct or inferred from the existence of a guardianship – that Wilson was actually incompetent at the time of the trial, Wilson can be held responsible for dilatory or contumacious conduct.

¶35. It is significant that the trial court explicitly found in its Order of Dismissal with Prejudice that "the Court's action is not required because of attorney conduct, but rather is based upon the action/inaction of the Plaintiff, and the testimony presented by Plaintiff in support of Plaintiff's Motion for Continuance, which resulted in this Court's entry of this Court's Order Declaring Mistrial." The Court also found that "the Plaintiff's failure to comply with this Court's Order did not result from the inability of Plaintiff to comply." The trial court was able to observe Wilson, her mother, and her attorney in the courtroom, and, in the absence of trial transcripts from October 4, 2006, and from the chancery court proceedings, this Court must defer to the trial court's conclusion regarding the relative fault of Wilson and her attorney. At this point, based on the record before this Court, there is no affirmative proof that the dilatory and contumacious conduct was caused by Wilson's counsel and not Wilson herself. This Court has held that the appellant is responsible for ensuring that the record includes all necessary support for his or her claims on appeal. *Oakwood Homes Corp. v. Randall*, 824 So. 2d 1292, 1293 (Miss. 2002) (citing *Shelton v. Kindred*, 279 So. 2d 642, 644 (Miss. 1973)). This Court concludes that the trial court properly found Wilson, as opposed to her attorney, responsible for the delay. If Wilson's counsel is to blame for the delay, then the proper course of action now (given the failure to articulate and support this claim on appeal) would be to pursue a malpractice action.

*Actual Prejudice to the Defendant*

16

¶36. Wilson briefly asserts on appeal that Nance has suffered no prejudice beyond incurring costs and fees from the "prolonged litigation." The trial court, however, found that

> the Plaintiff's failure to comply with this Court's Order resulted in prejudice to the Defendant, including the requirement that the Defendant incur needless litigation cost and expense, as well as a loss of income. Further, allowing this case to proceed would subject the Defendant to the potential of confronting new and different proof from a psychologist or psychiatrist despite the fact that no such proof has been identified by Plaintiff in Plaintiff's discovery responses.

Nance argues on appeal that in addition to incurring costs from the litigation and losses from missing work, he will be prejudiced by the passage of time since the accident and the loss of potential witnesses' testimony. This Court finds that the trial court properly found that Nance had suffered actual prejudice.

### *Intentional Conduct*

¶37. The trial court did not explicitly find that Wilson intentionally engaged in delay tactics and, based on the record and the arguments made on appeal, we cannot definitively conclude that Wilson intentionally delayed this case.

¶38. Nonetheless, Wilson's failure to comply with the court's order to establish a guardianship within ninety days of the mistrial justified a Rule 41(b) dismissal of her case. The type of court order falls within the scope of Rule 41(b), and the record reflects that there was a pattern of delay and contumacious conduct, that lesser sanctions were considered by the trial court and reasonably rejected, and that at least one aggravating factor is present.

¶39. We note that by reaching this conclusion today, this Court is in no way implying that plaintiffs with mental health problems or who are otherwise incompetent should be forced to proceed with a trial without a guardian if they wish to have one. Also, we do not imply

17

that clients should be sanctioned for their attorneys' negligence or error. Furthermore, the outcome in this case should not undermine the legal principle that Rule 41(b) dismissals should be exercised sparingly and only in the most egregious cases. We reach this result because of the specific facts presented, including the timing of Wilson's request for a continuance, Wilson's failure to provide documentation to support her mother's testimony, the trial court's grant of extraordinary relief when declaring the mistrial, and the trial court's explicit instructions to Wilson to comply with the order or risk dismissal of her case.

## CONCLUSION

¶40.    Because this Court finds that the trial court did not abuse its discretion in dismissing the case pursuant to Rule 41(b), the trial court's Order of Dismissal with Prejudice is hereby affirmed.

¶41.    **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH AND PIERCE, JJ., CONCUR. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ., AND JOINED IN PART BY LAMAR, J.**

**DICKINSON, JUSTICE, DISSENTING:**

¶42.    Because I believe the trial judge abused his discretion by dismissing the plaintiff's case with prejudice, I respectfully dissent.

¶43.    On October 4, 2006, the first day of trial, the trial court concluded that sufficient evidence of the plaintiff's incompetence existed to declare a mistrial and order her to complete guardianship proceedings within ninety days.[3]

---

[3] The timing of the appointment of a guardian is, of course, within the discretion of a chancellor, not the petitioner.

18

¶44. On November 15, 2006, the plaintiff filed a petition in the chancery court for appointment of a conservator.

¶45. On December 18, 2006 – realizing that the hearing date set by the chancery court would put her very close to the trial court's ninety-day deadline – the plaintiff filed a Motion for Additional Time to Complete Petition for the Appointment of Conservator on December 18, 2006.

¶46. On March 16, 2007, the chancellor – apparently convinced of the plaintiff's incompetence – appointed her a conservator. Nevertheless, because of the sixty-seven day delay in obtaining the chancery court order, the trial court dismissed the plaintiff's complaint, with prejudice. While it is true that the chancery court order was not obtained until after the trial court's deadline, the record does not disclose the reason for the delay (for which the plaintiff may, or may not, have been responsible). Furthermore, as it turned out, the trial court's arbitrary ninety-day deadline was unrealistic. The chancellor did not appoint a conservator until 107 days after the petition was filed. In short, parties have no control over when a chancellor acts on a petition. Thus, the plaintiff should not be deprived of her day in court simply because the chancellor did not act within the time frame arbitrarily set by the circuit court.

¶47. Had the plaintiff taken no steps to comply with the trial court's order, I might be inclined to agree with the majority. However, that is not the case. Dismissal of the complaint, with prejudice, was too harsh. Thus, I believe the trial court abused its discretion, and I would reverse and remand this case for trial.

**KITCHENS AND CHANDLER, JJ., JOIN THIS OPINION.  LAMAR, J., JOINS THIS OPINION IN PART**.