572 So.2d 371 (1990)
Gloria Jones WALLACE
v.
Otha Lee JONES.
No. 07-CA-59154.
Supreme Court of Mississippi.
September 19, 1990.
Rehearing Denied December 12, 1990.
Stella Terrell, Yazoo City, for appellant.
Hudson L. Thomas, Yazoo City, for appellee.
Before HAWKINS, ANDERSON and BLASS, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from the Chancery Court of Yazoo County where, upon the motion of the respondent/appellee, the chancellor dismissed the petitioner/appellant's complaint for contempt. In addition, the chancellor overruled appellant's motion for new trial. We reverse and remand. The appellant now alleges these errors:
THE COURT ERRED IN SUSTAINING A RULE 41(b) MOTION TO DISMISS
THE COURT ERRED IN RENDERING JUDGMENT TO WALLACE ON ITS FINDINGS OF DECEMBER 14, 1988
THE COURT ABUSED ITS DISCRETION IN OVERRULING THE MOTION FOR A NEW TRIAL[1]

STATEMENT OF THE FACTS
Gloria Jones Wallace [Wallace][2] and Otha Lee Jones [Jones] were married on March 17, 1978. During the marriage two children were born, but Jones claimed that *372 he did not father the younger child.[3] The parties were separated on September 25, 1983, and Jones filed his complaint for divorce on February 3, 1984, alleging adultery.
The court granted the divorce on June 16, 1984, and awarded the custody of the minor children to Wallace. The record is not entirely clear on what grounds the chancellor granted the divorce, but Jones was ordered to pay $280.00 per month as child support payments for the minor children. One-half of the amount was to be paid on the first day of each month, and the other half was due on the following fifteenth of each month. Unable to continue these payments, Jones petitioned for a modification, and the court responded by reducing the amount of support to $100 per month, with $50.00 due on the 1st and 15th of each month.
Even with this substantial reduction, Jones failed to abide by the court's order. From May 1, 1986, to September 15, 1987, Jones paid $40.00 for the support of his children. As a matter of fact, he missed twenty-nine consecutive payments. Thereafter, Wallace filed her Petition for Citation for Contempt on September 30, 1987. In this petition Wallace requested, inter alia, that Jones be adjudged in civil and criminal contempt, that the court render judgment against Jones for all past due child support as of the date of the hearing, and that Wallace be awarded a reasonable sum for attorneys' fees.
This hearing was held on November 2, 1987. The chancellor rendered his opinion on December 14, 1987. In his opinion the court found that Wallace had made a prima facie case of civil contempt and found that Jones was $1,835 in arrears, having paid only $465 from the date of the modification until November, 1987. Moreover, the chancellor found that Wallace was entitled to the past due amount, plus accrued interest.
According to the chancellor, Wallace had failed to prove that Jones deliberately defied the court's judgment; therefore, he granted Jones' motion to dismiss the criminal contempt charge. When the motion to dismiss was sustained, Jones took the stand as his only witness. He sought to prove his present inability to pay his back child support. His testimony revealed that he had no job, his present family was on public assistance and he paid only $14.00 per month for rent. Moreover, he had no borrowing power, but he was making reasonable efforts to find employment.
At the conclusion of the hearing, the chancellor believed that there remained one unanswered question  albeit the answer was strongly implied from his testimony: Does Jones have any property which he could be required to dispose of in order to pay back support? He continued the hearing for January 8, 1988, so that Jones could prove his inability to pay. Upon this proof, the court would render its final judgment. Of course Wallace would attempt to prove that Jones did have such property.
After a continuance, the hearing was held on January 12, 1988.[4] The chancellor reiterated that the focus of this hearing was to determine what assets, if any, Jones owned.
When the hearing finally resumed, the first witness to testify was Thomas Wally, Yazoo City branch manager for Unifirst Bank for Savings. The witness produced, pursuant to the wishes of Wallace, accounts of three people.[5] Included on this list was Otha Lee Jones. Wally emphasized that there may be conflicts in the addresses provided by Wallace and those that he had, and "the only way to really tie it down would be to compare social security numbers." Over Wallace's objection, the *373 court then allowed Jones to testify in order to make a complete record of his assets.
Jones testified that he did not have a bank account at Unifirst Bank. He owned no real property. He did not own a lawn mower, gun or stereo. The things he did own included a 1968 GMC pickup valued at approximately $300, a television for which he paid $25, and clothes. He also had an interest in a couch, chair, table and pictures on the wall, which were given to him and his present wife as wedding gifts.
When cross-examined by Wallace, Jones gave his social security number as XXX-XX-XXXX, and he denied ever having a mailing address at P.O. Box 433. He did have an account at Unifirst, however, that was when he was in high school. Jones was now thirty-one years old. When he was divorced from Wallace, he took no personal property other than the clothes on his back.
Wallace called Wally to the stand. He testified that the social security number of the account of the Otha Lee Jones that he had was XXX-XX-XXXX, and his address was listed as P.O. Box 433. This account was opened on August 6, 1987. Nothing from the account records indicated what proof of identification for Otha Lee Jones was used in establishing the account. But, according to Wally, when a person opens an account, he certifies that he has given his correct social security number. The witness could not identify Jones as the Otha Lee Jones who had an account with the bank. Therefore, the chancellor properly sustained the objection to Wallace's attempted admissions of the accounts provided by Wally.
Wallace testified next. She stated that when the parties separated and divorced Jones took with him a stereo worth $1,000.00, two guns, a Bible for which she had paid $41, and a lawn mower. She also testified that she could identify Jones' signature and that it was his signature that was on the original complaint for divorce. She also identified the signature on the Unifirst account as that of Jones, her former husband. Wallace again moved that the exhibit be admitted into evidence, and Jones properly objected because no proper foundation had been laid. The chancellor then gave this warning:
I would hope that both of you have sufficiently advised your client[s] about the crime of perjury. This is a matter that will be easily resolved by the district attorney and can be resolved by the district attorney. We now have him testifying he had no such account at Unifirst. We now have her identifying unequivocally this signature on this Exhibit 3 as his signature. It seems to me like we are getting into a position where somebody could be looking at subsequent perjury charges. Having said that, let's move along.
On cross-examination, Jones asked Wallace if she maintained that he had an account at Unifirst. At that point Wallace's counsel advised her to invoke her Fifth Amendment privilege. The court responded that it would have to dismiss her petition if she invoked her privilege because the question was relevant to establish contempt. When asked about the document a second time, Wallace, on advice of her attorney, again asserted the privilege. Jones then moved for dismissal and the court granted the motion.
On January 22, 1988, Wallace properly filed a Motion For New Trial claiming that she was entitled to have the case proceed to a hearing and final judgment on the merits. In her motion Wallace insisted that the Otha Lee Jones, who owns the Unifirst account, does in fact write "very similar to the Otha Lee Jones of these proceedings;" however, after further investigation, Wallace discovered that the account did not in fact belong to Jones.
The court denied the Motion for New Trial prompting Wallace to file this appeal.
Before we address the assignment below, we must deal with a preliminary matter. Contrary to what Wallace insists, she could not invoke her right against self incrimination thereby shielding herself from Jones' questions on cross-examination. Wallace voluntarily took the stand on direct examination and unequivocally identified the signatures on the bank account *374 and the divorce complaint as her former husband's.
In addressing Wallace's rights and responsibilities as a witness, one only needs to turn to Black v. State, where this Court stated the following:
Cross-examination is a matter of right. It is secured by the confrontation clause of the Sixth Amendment to the Constitution of the United States, made enforceable against the states via the Fourteenth Amendment. Delaware v. Van Arsdall, 475 U.S. 673, [678], 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 683 (1986). The right is secured independently by the confrontation clause of this state's constitution, Miss. Const., Art. 3, § 26 (1890), though it is more commonly thought of as a function of our law of evidence. As such its scope has been considered wide, coextensive with the limits of relevancy measured by the issues.
506 So.2d 264, 266-67 (Miss. 1987) (citations omitted). See Rule 611(b) Miss.R.E. (1989).
Without question, Jones had a right to ask this question. Notwithstanding the fact that our courts allow wide-open cross-examination[6], but Wallace during her direct testimony asserted that the signatures on the divorce complaint and the bank account were in fact her husband's. See, Sayles v. State, 552 So.2d 1383, 1385 (Miss. 1989); Miss. Code Ann., § 13-1-13 (1972). See also, Moore v. Moore, 558 So.2d 834, 837 (Miss. 1990) (where a party to a suit takes the stand and testifies on the merits of the case he also opens the door to cross-examination and impeachment to the same extent as any other witness in the same situation); Autry v. State, 230 Miss. 421, 436, 92 So.2d 856, 862 (1957) (once a person casts aside the cloak of immunity, he may not resume it at will whenever cross-examination may be inconvenient or embarrassing).
The law does not allow one such as Wallace to testify on the material facts in her proceedings, which she initiated, and later invoke her privilege on those same matters. On cross-examination she could have recanted voluntarily and said that the signature on the account was not her husband's. She could have said that she really did not know if that was his signature or she adamantly could have maintained that the signature was that of her husband.
Simply put, when Wallace voluntarily took the stand and testified to material matters on direct examination, she also waived her right against self incrimination.
Now we must turn to the assignment on appeal.

PROPOSITION I

THE COURT ERRED IN SUSTAINING A RULE 41(b) MOTION TO DISMISS

DISCUSSION OF THE LAW
M.R.C.P. 41 provides:
(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court may then render judgment against the plaintiff or may decline to render any judgment against the plaintiff or may decline to render judgment on the merits against the plaintiff, the court may make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any other dismissal not provided for in this rule, other than a dismissal *375 for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.
In discussing this assignment we note that our rule is patterned after the federal rule; therefore, the body of law emanating from the federal cases provides useful guidelines for consideration. See, Mitchell v. Rawls, 493 So.2d 361, 363 (Miss. 1986); Watson v. Lillard, 493 So.2d 1277, 1278 (Miss. 1986).
The comment to Miss.R.Civ.P. 41(b) states that the court may dismiss an action involuntarily for three different causes: dismissal at the close of the plaintiff's evidence for failure to show a right to relief; dismissal for want of prosecution, and dismissal for failure to comply with the rules of the court or any order of the court. See also, Sherwin Williams Co. v. Feld Brothers & Co., 139 Miss. 21, 28, 103 So. 795, 796 (1925); 5 Moore's Fed.Practice § 41.11.
It is obvious that the chancellor in the case sub judice did not grant the dismissal for Wallace's failure to show a right to relief. During the hearing on the Motion for Contempt, Wallace undoubtedly established a prima facie case of civil contempt against Jones. In his opinion, the chancellor stated:
... After the motion to dismiss was sustained as to the criminal contempt the respondent called himself to the stand as his only witness. The only charge (and issue) then remaining was the matter of his civil contempt. In her case in chief the petitioner had made a prima facie case of civil contempt against respondent ... She had shown by her testimony he had been ordered to pay and had not paid what he was required to pay. It was incumbent on the respondent, if he was to avoid civil contempt, to show his present inability to pay back his back child support... [T]he court finds, that commencing with the payment due January 15, 1986, and continuing to the date of the hearing the respondent had only paid $465.00 and through the date of the hearing was in arrears in the principal sum of $1,835.00 ... The unanswered question is  does the respondent have any property which he could be required to dispose of in order to pay back support ...
Consequently, when the hearing resumed on January 12, 1988, the chancellor emphasized that this hearing was continued because during the close of testimony on December 14, 1987, it was not clear whether the evidence sufficiently showed what assets the respondent owned. Therefore, the purpose of this hearing was to "entertain additional proof as to what assets the defendant or respondent owned." The chancellor continued:
It may be that the proof did unequivocally show what assets or lack of assets this defendant had, but when going through my notes after the trial of the cause, I recognized that, although it was certainly implied by certain testimony that he was getting food stamps and other things  that he probably had no assets. Yet, I did not find from my notes that it was clearly resolved. In fairness I felt like that point should be covered.
In the end it is unequivocal that Wallace had established that she was entitled to relief, and Jones was in civil contempt.
Now we must turn to whether Wallace's complaint was properly dismissed for the other two purposes as delineated in Rule 41(b). Before discussing those issues, however, it must be understood that in reviewing a trial court's decision to dismiss under 41(b), this Court may reverse only if it finds that the trial court abused its discretion. See, Morris v. Ocean Systems, Inc., 730 F.2d 248, 251 (5th Cir.1984); see also, Watson, 493 So.2d at 1279 (That this Court will not disturb a trial judge's finding on appeal unless it is manifestly wrong is a doctrine too well known to require citation).
In addition to the authority granted by 41(b), the power to dismiss an action for want of prosecution is part of a trial court's inherent authority. Link v. Wabash RR Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Gonzalez v. Firestone Tire & Rubber Co, 610 F.2d 241 (5th Cir. *376 1980); Watson v. Lillard, 493 So.2d 1277 (Miss. 1986). Moreover, dismissal for failure to comply with an order of the district court is appropriate only where there is a clear record of delay or contumacious conduct and lesser sanctions would not serve the best interests of justice. McGowan v. Faulkner Concrete Pipe, 659 F.2d 554, 558 (5th Cir.1981); Trakas v. Quality Brands, Inc., 759 F.2d 185, 187 (D.C. Cir.1985). This is so because dismissal with prejudice is an extreme and harsh sanction that deprives a litigant of the opportunity to pursue his claim, and any dismissals with prejudice are reserved for the most egregious cases. Rogers v. Kroger Co., 669 F.2d 317 (5th Cir.1982).[7]
What constitutes failure to prosecute depends on the facts of the particular case. Under 41(b) failure to prosecute implies that the case has not yet come to trial and the merits of the plaintiff's case have not yet been heard. In Watson, supra, for example, the plaintiff, on September 15, 1982, filed a complaint against the defendants charging malpractice and fraud. 493 So.2d at 1278. One of the defendants filed his answers in a timely fashion and the other defendant never filed his answer. Id. On December 6, 1982, Watson's counsel petitioned the court to allow them to withdraw as her attorneys. The court granted this motion and gave Watson sixty additional days to retain new counsel. Six days beyond this court-imposed deadline, Watson moved that the court substitute counsel. The court granted this request but required Watson to answer all interrogatories within twenty-five days and to set the case for trial before December 6, 1983. Id.
Before this date, however, on November 10, 1983, Watson's second team of counsel was granted its motion to withdraw as counsel. By December 6 Watson had done no more. A week later both defendants moved to dismiss for failure to prosecute. On January 6, 1984, the court ordered a dismissal unless Watson set the case for trial no later than February 6, 1984. Finally on February 8, 1984, the court dismissed the case with prejudice because Watson still had done nothing in pursuit of her claim. Realizing that her avenue for relief was coming to an end, Watson sought to set aside the dismissal on February 13, 1984. The court heard arguments from plaintiff and defendants, but he refused to set aside his dismissal. This Court affirmed. Id. at 1280. Accord. Rogers, 669 F.2d at 318-19 (After plaintiff filed his complaint in May, 1978, depositions were held then no other action was taken for more than a year; trial court allowed continuances, extended time for discovery and set trial date, which was postponed, and further extensions were allowed by court; finally case ready for trial on September 10, 1980 when plaintiff requested another continuance, but trial court dismissed); McGowan, 659 F.2d at 555-566 (Plaintiff took no depositions, engaged in no discovery, exchanged no exhibits, filed his first pre-trial order six days late and his proposed findings of fact and conclusions of law were forty-three days late, and he failed to reimburse defendant for certain discovery; therefore the trial court dismissed). See also, Smith v. Wilcox Board of Education, 365 So.2d 659 (Ala. 1978) (period of inactivity coupled with some other act warrants dismissal) (emphasis added).
In Rogers and McGowan above the lower courts were reversed for dismissing the plaintiffs' cases. The point for emphasis, however, is that the merits in the case sub judice, unlike the above cases, were, in fact, heard. Wallace established a prima facie case for relief. Furthermore, the case had come to trial and there was no want of prosecution. Therefore, the chancellor could not have dismissed this case under Rule 41(b) for Wallace's failure to prosecute the case.
The chancellor has a final alternative for dismissing under 41(b). She may do so if the plaintiff has failed to comply with rules or orders. This portion of the rule applies to various types of court orders. See, e.g., *377 5 Moore's Fed. Practice § 41.12 (these orders include, but are not limited to, an order to accept a tender of performance, order requiring plaintiff to serve an amended pleading, an order requiring a plain statement of claim, and an order requiring submission of pre-trial memoranda on the status of the case). See also, Ramsay v. Bailey, 531 F.2d 706 (5th Cir.1976), cert. denied, 429 U.S. 1107, 97 S.Ct. 1139, 51 L.Ed.2d 559 (1977) (dismissal not an abuse of discretion where action had been pending more than three years, had already been dismissed for want of prosecution and then reinstated, the plaintiff had unreasonably delayed replying to a discovery order, had received several time extensions, had interposed frivolous motions, had failed to file a reply brief after promising the court imminent, and had ignored repeated warnings); Asociacion de Empleados v. Rodriguez Morales, 538 F.2d 915 (1st Cir.1976) (dismissal not an abuse of discretion where plaintiffs had already received one time extension, had failed to comply with court directives, had failed to meet a filing deadline, and had proffered no plausible excuses); Price v. McGlathery, 792 F.2d 472 (5th Cir.1986) (dismissal not an abuse of discretion where plaintiff failed to timely file a pre-trial order in accordance with the standing pre-trial instructions; plaintiff failed to certify his intent to comply with standing pre-trial instructions and Rule 16; and after final warning of the last opportunity to bring suit, plaintiff failed to appear at pre-trial conference); and Coston v. Detroit Edison Co., 789 F.2d 377, 379 (6th Cir.1986) (repeated failure of counsel to appear both at trial proceedings and on appeal without excuse justifies dismissal).
The preceding cases provide some examples of court orders that Rule 41(b) is concerned. The orders are limited to those orders that are necessary for preparation of trial litigation as well as the trial itself and its procedure insofar as it relates to the rules of civil procedure. One of the central purposes of the procedural rules is to allow the trial court to move every case on the docket with reasonable promptness. With the interpretation of the rules that have been given this rule, it is apparent that Wallace's actions do not violate the rule.
Having rejected each ground that the court may use to dismiss a claim pursuant to Rule 41(b), it is clear that the chancellor had no basis to dismiss the claim with prejudice. But, even if the chancellor had a proper basis to dismiss this case under Rule 41(b), we would still have to reverse because a dismissal should be granted only when lesser sanctions would not serve the best interest of justice. Price, 792 F.2d at 475 (5th Cir.1986); see also McGowan, supra, 659 F.2d at 557 (Dismissal under Rule 41(b) should be used sparingly and only when less drastic alternatives have been explored) (citation omitted).
It is obvious that dismissal with prejudice was inappropriate and an abuse of discretion. This case involves a contempt proceeding. To dismiss it with prejudice means that if Jones, during the period before the younger child is emancipated, is showered with money or blessed with a full-time employment, then Wallace would be unable to reinstate her Motion for Contempt. Not only does the mother have a legitimate claim, but the children, who are entitled to support from their father, also have a claim for relief until they reach the age of majority.
The trial court obviously had reason to be upset with Wallace's actions, but from the record there is no evidence that he considered less severe sanctions, which he may have been justified in imposing. Lesser sanctions include "fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings." Rogers, 669 F.2d at 321 (5th Cir.1982) (emphasis added). See also, McGowan, 659 F.2d at 557 n. 1 (5th Cir.1981); Trakas, 759 F.2d at 188 (D.C. Cir.1985). The children involved in this case should not suffer because of the attorney's or the mother's actions. However, members of the bar should be warned that when you allow your client to testify on material matters involved in a case then *378 opposing counsel has a right or even a duty to cross-examine the witness.
Therefore, the chancellor erred in dismissing this cause under Rule 41(b). This opinion, however, does not infringe upon the lower court's findings concerning civil contempt. But, this action remains alive so that the children's interests are protected.
REVERSED AND REMANDED
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
NOTES
[1] The issues will be consolidated because our discussion of the first assignment will answer the remaining two.
[2] In some instances throughout this opinion Wallace refers to the petitioner/appellant and/or her counsel.
[3] One child was born on April 2, 1982, and the other was born on September 2, 1983.
[4] Wallace received notice of this hearing on January 8, 1988, and on that day, she filed a subpoena duces tecum to be issued to Unifirst Savings Bank requesting that it produce the records of any assets held by an Otha Lee Jones. Unifirst received a copy of this summons on the close of business on January 11, 1988.
[5] Specifically, Wally presented the accounts for an Otha Lee Jones and Rev. A.B. Jones, the appellee's father. The third account was styled Rev. A.B. Jones or Rosie Lee Jones.
[6] During wide-open cross-examination, the cross-examiner can inquire into any relevant matter. This means he not only can attempt to get the witness to retract or qualify part of his direct testimony, but he may have the witness testify about matters bypassed by the direct examiner, including those that aid in establishing a counter-claim, cross-claim, or affirmative defense. Lilly, An Introduction to the Law of Evidence, § 4.10 (2d. 1987).
[7] Since the chancellor did not say otherwise his dismissal is presumed to be with prejudice, an adjudication on the merits. Branizza v. Greyhound Corp., 394 F.2d 33 (5th Cir.1968); see also, Comment to Miss.R.Civ.R. 41(b); 5 Moore's Fed.Practice § 41.14.