COLEMAN, Justice,
for the Court:
¶ 1. The instant case arises out of a dispute regarding local ad valorem taxes on real estate developments that use federal tax credits to construct and maintain restrictive properties that rent only to lower-income households. The question is whether local governments may include the value of federal tax credits in their valuation of the properties for tax assessment purposes. We hold that Mississippi Code Section 27-35-50(4)(d) prohibits them from doing so.

FACTS AND PROCEDURAL HISTORY

¶ 2. Willow Bend Estates and Woodyard Gardens (collectively “Willow Bend”) are two privately owned housing complexes that were built in part using capital created by federal tax credits under the Low-Income Housing Tax Credit Program (“LIHTC”). The LIHTC program awards federal credits to Mississippi. The state, through the Mississippi Housing Corporation, then awards the credits to private-sector developers. In return, the developers construct housing complexes that are open only to households with incomes below a set maximum threshold. The developers are restricted in the amount of rent they may charge their tenants. Once a developer receives the credits, it usually sells them to a third-party investor in exchange for capital with which to construct the housing development. The investors *496 claim the income tax credits for ten years under 26 U.S.C. Section 42(f)(1), but the housing development is placed under the restrictive housing covenants for thirty years. The housing developments are commonly referred to as “Section 42 housing properties.”
¶ 3. In 2005, the Mississippi Legislature enacted Mississippi Code Section 27-35-50(4)(d). The statute requires local tax assessors to determine the true value of affordable rental housing by using the appraisal method set forth in the manual of the State Tax Commission (now the Department of Revenue), and that such procedure shall implement the “actual net operating income” methodology.
¶ 4. Despite the new law, Humphreys County continued to include the federal tax credits through the “cost” methodology in its valuation of Willow Bend. The different types of valuation result in extreme variations. For example, using the income method as prescribed by the statute, Willow Bend would have paid nothing in taxes for 2009, but under the county’s approach, it would have owed $74,038.
¶ 5. Willow Bend appealed the county’s 2009 assessments and filed for summary judgment on December 23, 2010. The county responded to the motion and filed a cross-motion for declaratory judgment. The county also notified the Attorney General of its actions. The trial court never formally consolidated the 2009 appeal with Willow Bend’s three substantially similar prior suits that were still pending before the court, although the trial court and parties treated the case as if it were consolidated. Arguments regarding the motions were heard by the Humphreys County Circuit Court on October 24, 2011. The trial court denied Willow Bend’s motion for summary judgment and granted the county’s motion for declaratory judgment on March 16, 2012. In doing so, the court found that Section 27-35-50(4)(d) does not preclude the county from including tax credits in the valuation and declared the Department of Revenue’s guidelines to be unconstitutional. Willow Bend filed an interlocutory appeal. Willow Bend also filed an undisputed motion for the Court to take judicial notice of the three prior appeals so that the record from the appeals could augment the record. We deny the motion, finding it unnecessary to resolve the appeal.
¶ 6. While the case sub judice involves a dispute among two housing developments and one county government, the Court’s decision will have a marked impact statewide. Three amicus curiae briefs have been filed in the case: the Mississippi Center for Justice and Mississippi Association of Affordable Housing Providers each filed a brief in support of Willow Bend. The Mississippi Association of Supervisors and Mississippi Municipal League filed a joint brief in support of Humphreys County-

DISCUSSION

¶ 7. The county urges the Court to affirm the declaratory judgment of the trial court and allow it to continue assessing property under the cost approach and include any federal tax credits that were originally issued to the developer. In support of its assertion, the county makes the following arguments: (1) the legislative history of the act can lead one to conclude only that the Legislature never intended for the income method to be the only avenue available for the assessing the value of affordable housing, and (2) alternatively, the act itself and the manual are unconstitutional.
I. Legislative History
¶ 8. Section 27-35-50(4)(d) reads as follows:
*497 In arriving at the true value of affordable rental housing, the assessor shall use the appraisal procedure set forth in land appraisal manuals of the State Tax Commission. Such procedure shall prescribe that the appraisal shall be made according to actual net operating income attributable to the property, capitalized at a market value capitalization rate prescribed by the State Tax Commission that reflects the prevailing cost of capital for commercial real estate in the geographical market in which the affordable rental housing is located adjusted for the enhanced risk that any recorded land use regulation places on the net operating, income from the property. The owner of affordable rental housing shall provide to the county tax assessor on or before April 1 of each year, an accurate statement of the actual net operating income attributable to the property for the immediately preceding year prepared in accordance with generally acceptable accounting principles.
Miss.Code Ann. § 27 — 35—50(4)(d) (Rev. 2010) (emphasis added). However, when the legislation originally was introduced as Senate Bill .3100, it contained additional language that was removed before final passage. “Any tax credits, income generated from tax credits or other governmental subsidies, shall not be considered as income attributable to the property and shall be exempt from ad valorem taxation.” S.B. 3100, 2005 Reg. Sess. (Miss.2005).
¶ 9. The county and its amicus curiae assert that both our caselaw and the canons of legislative construction require the Court to consider such deletion in in-' terpreting the statute. Yet even the -authority cited by the county states that such interpretation should be employed only where the statute is ambiguous. “In considering a statute passed by the [Legislature, ... the first question a court should decide is whether the statute is ambiguous. If it is .not ambiguous, the court should simply apply the statute according to its plain meaning and should not use principles of statutory construction.” City of Natchez, Miss. v. Sullivan, 612 So.2d 1087, 1089 (Miss.1992) (citing Pinkton v. State, 481 So.2d 306 (Miss.1985)). See also State ex rel. Hood v. Madison County ex rel. Madison County Bd. of Supervisors, 873 So.2d 85 (Miss.2004). “The history of events during the process of enactment, from its introduction in the legislature to its final validation, has generally been the first extrinsic aid ... in attempting to construe an ambiguous act.” Norman J. Singer, Sutherland Statutes and Statutory Construction § 48:4 (7th ed.2007) (emphasis added).
¶ 10. The statute as enacted is not ambiguous. First, there is no disagreement in the record regarding the meaning of the term “actual net operating income.” The county’s own witness, Frank McCain, the director of the Property Tax Division at the Department of Revenue, stated in his deposition that actual net income can mean only excluding the credits from valuation. He further stated that it was his opinion, as well as the department’s, that the law permitted no discretion as to whether the income methodology should be employed as the only approach for valuation of Section 42 properties in the department’s manual. The county’s assessor reached the same conclusion.
¶ 11. Second, the county does not present an alternative interpretation of the statute. It simply notes that the words “tax credit” cannot be found in the statute, thus it does not prohibit á valuation that includes tax credits, and the Legislature had no intention of implementing such prohibition. However, the assertion wholly ignores the remainder of the statute and its explicit requirement to follow the de *498 partment’s assessment manual with a prescribed methodology.
¶ 12. Because the statute is not ambiguous, it is both unnecessary and improper for the Court to attempt to divine the intent of the Legislature from three lines of deleted language.
II. Constitutionality of the Act
¶ 13. The county asks the Court to affirm the circuit court’s holding that the income method is unconstitutional under Article IV, Section 112 of the Mississippi Constitution. Specifically, it cites the first sentence of the section. “Taxation shall be uniform and equal throughout the state.” Miss. Const, art 4 § 112. If the quoted sentence were read in isolation, the county’s argument might be proven correct. Section 112, however, goes on to state: “The Legislature shall provide, by general laws, the method by which the true value of taxable property shall be ascertained .... ” Id. The county asserts that methods must be uniform within each class. Section 42 developments would be, according to Section 112, in Class II along with completely private, multi-unit properties.
¶ 14. In support of its interpretation of Section 112, the county relies upon Rebelwood, Ltd. v. Hinds County, 544 So.2d 1356 (Miss.1989) (plurality opinion). There, the Court ruled that the county could include federal subsidies in assessing the value of a multi-unit property. However, in addition to being a plurality opinion, Rebelwood supports Willow Bend’s position. First, the Court looked to the legislative implementation of the provision for guidance. Id. at 1363. At the time of the Rebelwood decision, the statute allowed for assessors to use one of three types of assessment methodologies. Id. at 1360. By contrast, the law in the case sub judice, as discussed above, allows only for the income methodology, which irrefutably precludes inclusion of the credits. Second, the Court noted that the class designation functions as a simple requirement that the tax rate be uniform within the class, not necessarily the method of determining true value. Id. at 1363. Third, the Rebelwood Court stated that, in determining value, the central question is whether the federal benefits involved affect its value to the taxpayer or in the open market, and that Section 112 is satisfied when the assessor considers all factors affecting true value. Id. at 1363, 1366. In assessing Willow Bend’s value, the county looked only at the dollar amount of the tax credit initially received, but it did not consider the impact of the credit on the value of the property. Unlike in Rebelwood, the owners of Willow Bend do not receive an annual subsidy, because the credits have been sold to third-party investors. In fact, the Rebelwood apartments operated under a different federal housing program. Additionally, the Willow Bend properties carry thirty-year-long restrictive covenants as well as restrictions on raising rents. Such limitations make the property extremely illiquid. Moreover, if the property were sold, the new buyer would receive no benefit from the initial tax credit. Therefore, under the marketplace-based approach of Rebelwood, the tax credit should not be considered in determining the properties’ true value.
¶ 15. In short, Willow Bend, in terms of value, is not similarly situated to an ordinary private complex. It has a different financing scheme, a restricted clientele, minimal liquidity, and very few financing avenues. The Legislature, apparently having taken note of the unique position of such properties and of their value to the low-income families of the state, purposefully decided to limit the methodology of *499 valuation. The Court has long held that “tax statutes must be read strictly as written.” Gen. Motors Corp. v. Miss. State Tax Comm'n 510 So.2d 498, 500 (Miss. 1987). “If [the United States] Congress or the Mississippi legislature wishes, it may ... create tax credits to assist ... unfortunate lessees. It is not the function of the courts, construing and enforcing contracts under state law, to intervene” when the application of statutes enacted by the Legislature produce an unfavorable result. Piney Woods Country Life Sch. v. Shell Oil Co., 726 F.2d 225, 287 (5th Cir. 1984). “Any disagreements with the Legislature’s directives on tax [policy] ‘are best aimed toward the Legislature.”’ 3545 Mitchell Road, LLC v. Bd. of Supervisors of Lee County, 62 So.3d 379, 386 (¶29) (Miss. 2011) (quoting Bucket v. Chaney, 47 So. 3d 148, 159-60 (Miss.2010)). Here, the Legislature properly exercised its prerogative under Section 112 of the Mississippi Constitution in limiting the valuation method for properties such as the Willow Bend property.

CONCLUSION

¶ 16. Given the lack of ambiguity in the record over what the final language of S.B. 3100 means, divination of intent regarding any deleted language is unnecessary and improper. Further, the Legislature did not violate Article 4, Section 112 when it enacted Mississippi Code Section 27-35-50(4)(d) because Section 112 explicitly allows the Legislature to adopt laws which dictate how true value is to be determined. Therefore, the judgment of the trial court is reversed, and the case is remanded to the Humphreys County Circuit Court with instructions to refund all taxes erroneously collected under the cost methodology since 2006.
¶ 17. REVERSED AND REMANDED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ„ CONCUR.