# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00120-SCT

*SW 98/99, LLC*

*v.*

*PIKE COUNTY, MISSISSIPPI, LEXIE ELMORE,*
*TAZWELL BOWSKY, AUBREY L. MATTHEWS,*
*VENTON ADAMS, CARROLL L. FORTENBERRY,*
*JOE B. YOUNG, TAX ASSESSOR, CHUCK E.*
*LAMBERT AND GARY HONEA*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/2015 |
| TRIAL JUDGE: | HON. DEBBRA K. HALFORD |
| TRIAL COURT ATTORNEYS: | JOHN H. OTT |
| | KEN R. ADCOCK |
| | WAYNE DOWDY |
| | DUNBAR DOWDY WATT |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | KEN R. ADCOCK |
| | WILLIAM C. IVISON |
| ATTORNEY FOR APPELLEES: | WAYNE DOWDY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 05/17/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHAMBERLIN AND ISHEE, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. SW 98/99, LLC ("SW"), appeals the order of the Pike County Chancery Court dismissing its complaint with prejudice under Mississippi Rule of Civil Procedure 41(b). Finding that the chancery court abused its discretion in ruling that SW had failed to prosecute

its complaint, we reverse the chancery court's judgment and remand this case to the chancery court for further proceedings.

## FACTS & PROCEDURAL HISTORY

¶2.      SW owns two low-income housing properties in Pike County, which it operates as "affordable rental housing" under Section 42 of the Internal Revenue Code.  In 2005, the Mississippi Legislature amended Section 27-35-50 of the Mississippi Code to address the tax-appraisal method for affordable rental housing, such as SW's properties. However, SW alleges that the Pike County Board of Supervisors and Tax Assessor disregarded this new statutory requirement and continued to appraise SW's properties using a "cost approach" method, which included the value of certain federal tax credits in the properties' appraised values.  Under the appraisal method required by the amended Section 27-35-50(4)(d),[1] SW alleges that these tax credits should not have been included in the value of its properties.

---

[1] Section 27-35-50(4)(d) provides:

> In arriving at the true value of affordable rental housing, the assessor shall use the appraisal procedure set forth in land appraisal manuals of the Department of Revenue. Such procedure shall prescribe that the appraisal shall be made according to actual net operating income attributable to the property, capitalized at a market value capitalization rate prescribed by the Department of Revenue that reflects the prevailing cost of capital for commercial real estate in the geographical market in which the affordable rental housing is located adjusted for the enhanced risk that any recorded land use regulation places on the net operating income from the property. The owner of affordable rental housing shall provide to the county tax assessor on or before April 1 of each year, an accurate statement of the actual net operating income attributable to the property for the immediately preceding year prepared in accordance with generally acceptable accounting principles.

Miss. Code Ann. § 27-35-50(4)(d) (Rev. 2017).

¶3. SW filed objections to the tax assessments for the years 2005 and 2006, but those objections were denied. SW then filed a complaint in Pike County Chancery Court alleging that Pike County, the Pike County Board of Supervisors, and the Pike County Tax Assessor (collectively "the defendants") had wrongfully and excessively assessed taxes on SW's properties using an appraisal method not authorized by Section 27-35-50(4)(d). SW sought damages for the defendants' negligent and/or willful statutory violations, as well as an injunction prohibiting the defendants from using the "cost approach" method for future tax appraisals. SW also asked the chancery court to remove the individual defendants from office for violation of their official duties. SW subsequently filed identical lawsuits for the years 2007 and 2008, and the chancellor consolidated all of these cases into a single cause of action.

¶4. Along with SW's chancery-court lawsuit, SW also appealed the property-tax assessments to the Pike County Circuit Court. SW presented the same legal argument in its tax appeals as it did in this case: the defendants had violated Section 27-35-50(4)(d) by including the value of federal tax credits in the tax appraisals of its properties. The only difference between the two actions is the relief sought: SW's circuit-court tax appeals seek a refund of overpaid taxes, while SW's chancery-court suit seeks damages and injunctive relief.

¶5. This case and SW's tax appeals proceeded separately along their own paths until March 2011, when the chancellor entered an order granting the defendants' motion to stay the proceedings in this case pending final resolution of SW's circuit-court tax appeals. The

3

chancellor found that the two cases shared the same threshold issue: "whether or not the Defendants violated Miss. Code Ann. § 27-35-50(4)(d) by including the value of the sale of tax credits in appraising the value of the property each year and assessing ad valorem taxes on that value." Accordingly, the chancellor stayed the proceedings in this case and held SW's summary-judgment motion in abeyance "until such time as the tax appeals currently pending in the Circuit Court of Pike County are finally resolved." As a result of the stay, this case sat dormant from March 28, 2011, until February 2, 2015.

¶6.    In 2013, while SW's tax appeals were pending before the circuit court, this Court issued an opinion holding that Section 27-35-50(4)(d) prohibits the inclusion of federal tax credits in the tax-appraisal value of properties that qualify as "affordable rental housing." ***Willow Bend Estates, LLC v. Humphreys Cty. Bd. of Supervisors***, 166 So. 3d 494, 495 (Miss. 2013).  The mandate in ***Willow Bend*** issued on August 14, 2014.

¶7.    Following this Court's ruling in ***Willow Bend***, on February 12, 2015, SW and the defendants entered an agreed order in the chancery-court case setting a trial date for September 15, 2015. SW alleges that it agreed to this trial date only because it believed its tax appeals in the parallel circuit-court action would be resolved well in advance of that date in light of the ***Willow Bend*** decision.  The agreed order setting the trial date does not mention the chancellor's prior order staying proceedings.

¶8.    On May 4, 2015, the Pike County Circuit Court granted summary judgment to SW on each of its tax appeals, ordering the defendants to refund SW's overpayments for the years

4

2005 through 2012. The defendants filed a motion for reconsideration of the circuit court's judgment on May 14, 2015.

¶9.    On June 25, 2015, SW filed a motion to amend and consolidate its chancery-court complaints to include claims for the tax years 2009 through 2013. This motion was scheduled for a hearing on September 8, 2015. In response to SW's motion, the defendants filed a motion to dismiss, or alternatively, for summary judgment.

¶10.    During this time period, SW's attorney was involved in an unrelated case in the United States District Court for the Southern District of Mississippi. On August 12, 2015, the district court contacted SW's attorney to inquire as to his availability for a trial beginning September 14, 2015 – one day before the trial setting in the instant case. Because the circuit court had not yet ruled on the defendants' motion for reconsideration in SW's tax appeals, SW's attorney believed that the chancellor's stay of proceedings in this case remained in effect, as the circuit-court proceedings were not "finally resolved." Because of this, SW's attorney contacted the chancery court to request that the trial date be continued and removed from the trial docket.  The chancellor was on medical leave at this time.  SW's attorney called the chancellor's court administrator to inform her of the need for a continuance of the scheduled trial date. Although later disputed by the court administrator, SW's attorney believed at this time that the case had been continued and that the trial setting had been removed from the docket.  SW's attorney then informed counsel for the defendants of the continuance.  The defendants had no objection to the continuance. SW's attorney then informed the federal court that he would be available for a September 14, 2015, trial.

¶11. On September 4, 2015, SW's attorney's secretary called the chancellor's court administrator to request that SW's motion to amend and consolidate its complaints be taken off the hearing docket. SW's attorney was unable to get in touch with the court administrator at this time but his secretary left a voicemail message. SW's attorney also called the defendants' counsel to inform him that the motions hearing would be cancelled.

¶12. On September 8, 2015, the date scheduled for SW's motions hearing, counsel for the defendants was attending a meeting of the Pike County Board of Supervisors at the chancery courthouse and was called into the courtroom by Senior Status Judge Larry Buffington, who was serving as a special appointed judge while the chancellor was on medical leave. According to SW, counsel for the defendants told Judge Buffington that he had been advised by SW's attorney that both the motions hearing and the trial had been continued.

¶13. Neither of the parties appeared for the September 15, 2015, trial setting. On September 18, 2015, the chancellor, who had returned to the bench, entered a show-cause order instructing the parties to appear in court and explain why this case should not be dismissed. The show-cause order stated that the parties' agreed order setting a trial date "indicat[ed] that the certain other tax appeals had been resolved." The order also noted that SW had not appeared at its scheduled motions hearing and that neither of the parties had appeared on the scheduled trial date. The order acknowledged that "some telephonic communication was made by a staff member of Counsel to the Court Administrator regarding the prior Order staying this litigation."[2] The chancellor's show-cause order concluded that

---

[2] However, the order does not mention the conversation between Judge Buffington and counsel for the defendants reflecting an understanding that the case had been continued.

SW's lawsuit was "stale and in a posture to be dismissed for lack of prosecution inasmuch as Counsel set aside two full trial days on a heavily congested trial docket and failed to appear for trial."

¶14. In response to the show-cause order, the defendants filed a Consent for Dismissal in which they agreed that SW's lawsuit was stale and should be dismissed. The defendants also argued that the Mississippi Tort Claims Act shielded them from immunity and that SW had failed to comply with the Tort Claims Act's notice-of-claim requirement before filing suit.

¶15. Prior to the hearing, the chancellor's court administrator sent an email to SW's attorney explaining that the stay in this case had been lifted when the parties agreed to a trial date and "[w]hen a matter is set for trial and no motion for continuance is filed and noticed, the matter should be dismissed." While acknowledging her prior conversation with SW's attorney, the court administrator asserted that she was "not authorized to 'remove' anything from the trial docket."

¶16. The show-cause hearing was held on November 9 and December 7, 2015. At the hearing, the chancellor again acknowledged that SW's attorney had spoken with her court administrator about continuing the case. However, the chancellor reported from the bench that her court administrator had assured the chancellor that she had not told SW's attorney that the case would be continued. The chancellor noted that Judge Buffington had indicated to the defendants that the trial had been continued, but she also found that Judge Buffington never entered an order continuing the trial date. The parties also discussed the possibility of

7

transferring the case to Pike County Circuit Court rather than dismissing it, since the circuit court still had not ruled on the defendants' motion for reconsideration in SW's tax appeals.

¶17.   At the conclusion of the hearing, the chancellor ruled:

> The Court is going to do this; I am going to dismiss these cases. If you want to file amended pleadings in circuit court seeking to expand the relief you seeking [sic], certainly, that is something for the circuit judge to decide. I will dismiss these cases off the docket and let the circuit court handle whatever it is.

The next day, the chancellor entered a Judgment of Dismissal, finding that, because SW had failed to appear at its scheduled motions hearing and at trial and had neglected to file formal motions to continue those proceedings, the case was "stale" and was appropriate for dismissal under Rule 41(b) of the Mississippi Rules of Civil Procedure.

¶18.   SW filed a Motion for Reconsideration on December 17, 2015, in which SW's attorney attested to his recollection of his conversations with the chancellor's court administrator and argued that the order setting a trial date did not lift the stay because the circuit-court case still had not been finally resolved. On December 22, 2016, SW filed a supplement to its motion for reconsideration. The chancellor denied SW's motion on December 27, 2016, finding that SW had all but abandoned its motion by failing to set it for a hearing and that SW had not filed its supplement properly.

¶19.   SW now appeals the dismissal of its complaint, arguing that the chancery court abused its discretion by dismissing this case with prejudice because there was no evidence of dilatory or contumacious conduct attributable directly to SW, because the chancery court

8

had failed to consider lesser sanctions, and because no aggravating factors justifying dismissal exist in this case.

## DISCUSSION

**Whether the chancery court abused its discretion in dismissing SW's complaint with prejudice for failure to prosecute.**

¶20. Mississippi Rule of Civil Procedure 41(b) allows a defendant to move to dismiss an action or claim "[f]or the failure of the plaintiff to prosecute or to comply with these rules or any order of court." Miss. R. Civ. P. 41(b). But the trial court has the authority to dismiss an action even in the absence of a motion by the defendant, because "[t]he power to dismiss for failure to prosecute is an inherent power in any court of law or equity and has been regarded as a means necessary to control the court's docket and promote the orderly expedition of justice." *Watson v. Lillard*, 493 So. 2d 1277, 1278 (Miss. 1986). Unless the trial court specifies otherwise, dismissal under Rule 41(b) operates as an adjudication on the merits and is with prejudice. *Taylor v. GMC*, 717 So. 2d 747, 748 (Miss. 1998).

¶21. "What constitutes failure to prosecute is considered on a case-by-case basis." *Cox v. Cox*, 976 So. 2d 869, 874 (Miss. 2008). The trial court's decision to dismiss a complaint for failure to prosecute is reviewed for an abuse of discretion. *Wallace v. Jones*, 572 So. 2d 371, 375 (Miss. 1990). However, this Court has cautioned that the harsh sanction of dismissal with prejudice should be "employed reluctantly," because the law favors trial of issues on the merits. *AT&T Co. v. Days Inn of Winona*, 720 So. 2d 178, 180 (Miss. 1998). *See also Wallace*, 572 So. 2d at 376 (finding that "dismissals with prejudice are reserved for the most egregious cases"). Accordingly, dismissal under Rule 41(b) is appropriate only

9

"where the record shows that a plaintiff has been guilty of dilatory or contumacious conduct." *Watson*, 493 So. 2d at 1279. This Court also must consider whether lesser sanctions would have been sufficient to serve the best interests of justice. *Holder v. Orange Grove Med. Specialties, P.A.*, 54 So. 3d 192, 197 (Miss. 2010). Finally, this Court has identified several other aggravating factors that may be considered, including "the extent to which the plaintiff, as distinguished from his counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct." *Days Inn*, 720 So. 2d at 181.

¶22. Here, the chancery court dismissed SW's complaint because SW had failed to appear at a motions hearing and at trial and had neglected to file motions to continue those proceedings. On appeal, SW contends that the chancery court abused its discretion because SW's failure to appear was the result of a genuine misunderstanding as to whether the chancellor's prior order staying the proceedings remained in effect and whether the court administrator had removed the motions hearing and trial dates from the docket. SW also asserts that the chancellor failed to consider whether lesser sanctions would serve the interests of justice. And finally, SW argues that no aggravating factors supporting dismissal are present in this case. We address each of these factors separately below.

### A. Dilatory or Contumacious Conduct

¶23. The first question before this Court is whether this case presents a clear record of dilatory or contumacious conduct on the part of the plaintiff. In reviewing this factor, this Court considers whether the plaintiff's conduct during the litigation was proactive or merely

reactionary. ***Hillman v. Weatherly***, 14 So. 3d 721, 727 (Miss. 2009) (finding a clear record of delay where plaintiff did not respond to discovery until both the defendant and the circuit clerk had filed motions to dismiss for want of prosecution). While there is no set time limit to prosecute an lawsuit, the cases in which this Court has affirmed the dismissal of a complaint for failure to prosecute often feature a substantial period of delay that clearly evinces the plaintiff's prolonged failure to pursue its claims. *See* ***Manning v. King's Daughters Med. Ctr.***, 138 So. 3d 109, 116 (Miss. 2014) (plaintiff took no action for two years after filing her complaint, failed to respond to discovery, and took more than a year to respond to the defendant's motion to dismiss); ***Holder***, 54 So. 3d at 199 (plaintiffs delayed their response to the defendant's interrogatories for 435 days, failed to timely serve discovery requests on the defendant, and were late in responding to the defendant's motion to dismiss; ***Hillman***, 14 So. 3d at 727 (circuit clerk filed two motions to dismiss plaintiff's complaint for want of prosecution, and plaintiff failed to respond to discovery for three years). In ***Days Inn***, on the other hand, this Court considered a scenario factually similar to the instant case, in which the trial court dismissed the plaintiff's complaint over what the plaintiff's attorney alleged to be a legitimate scheduling misunderstanding. ***Days Inn***, 720 So. 2d at 182. In ***Days Inn***, the trial court dismissed the plaintiff's complaint after the plaintiff failed to respond to the defendant's motion to dismiss and failed to appear at a hearing on that motion. ***Id.*** at 179. The plaintiff's attorney explained that he had spoken with the trial judge prior to the date of the hearing and had agreed to continue the trial docket in the case to a future term. ***Id.*** at 180. Based on this agreement, the plaintiff's

11

attorney claimed that he reasonably had believed that the hearing on the defendant's motion to dismiss was "off the calendar." *Id.*  On appeal, this Court reversed the trial court's dismissal of the complaint, finding that the conduct of the plaintiff's attorney, while "less than diligent," "does not constitute a contemptuous resistance to the authority of the trial court or a clear record of unilateral delay." *Id* at 181.

¶24.    After reviewing the record before the trial court, we find that this case is analogous to *Days Inn* and does not present a clear record of dilatory or contumacious conduct by SW. This case is distinguishable from *Manning*, *Holder*, and *Hillman*, where the plaintiffs took no action until faced with the potential dismissal of their cases.  The defendants do not dispute that SW actively litigated this case from 2007 to 2011, when the chancellor imposed a stay in the proceedings *at the request of the defendants.* Following this Court's decision in *Willow Bend*, SW agreed with the defendants to set a trial date by order of February 12, 2015, believing that its tax appeals would be "finally resolved" within the intervening seven months, thereby fulfilling the condition for lifting the stay.

¶25.    When it became clear that the defendants' motion for reconsideration would not be resolved by the circuit court prior to the trial date in this case, SW alleges that its attorney contacted the chancellor's court administrator to request continuances of its motions hearing and the trial date that previously had been set by the agreement of the parties. SW should have filed formal motions requesting continuances rather than simply relying on oral representations of court staff. *See* Miss. R. Civ. P. 7(b)(1) ("An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be in writing

12

. . . .").[3] Thus, we cannot say that the chancellor manifestly erred in findings that her court administrator had not authorized the continuance of the motion hearing and trial and that the parties' agreed order setting a trial date had the effect of lifting the stay. *See **Cummings v. Benderman***, 681 So. 2d 97, 100 (Miss. 1996) ("This Court will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard."). However, while SW's actions may have been "less than diligent," as in ***Days Inn***, we do not find that SW's actions amount to a clear record of delay or contumacious conduct, which is required for dismissal with prejudice under Rule 41(b). *See **Days Inn***, 720 So. 2d at 179.

### B.     Consideration of Lesser Sanctions

¶26.    This Court also must consider whether the imposition of lesser sanctions would have better served the interests of justice in this case. "Lesser sanctions include 'fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings.'" ***Wallace***, 572 So. 2d at 877 (quoting ***Rogers***, 669 F.2d at 321)). However, "[t]hese sanctions will not suffice if they do not cure the prejudice caused by the delay." "Where there is no indication in the record that the lower court considered any alternative sanctions to expedite proceedings, appellate courts are less likely to uphold a Rule 41(b) dismissal." ***Days Inn***, 720 So. 2d at 181. *But see*

---

[3] The defendants argue that SW's complaint was dismissed in part for failure to comply with Rule 7(b)(1), but this rule is not cited in the chancery court's judgment of dismissal.

13

*Collins*, 59 So. 3d at 590 (finding that trial court's failure to expressly consider lesser sanctions does not require reversal). Here, the chancellor's order dismissing SW's complaint does not address the propriety of lesser sanctions than dismissal, nor did the chancellor address this issue at the show-cause hearing. Nevertheless, we find no evidence that it would have been appropriate to consider even lesser sanctions in this case. SW did not deliberately attempt to delay the proceedings, the delay was minimal, and the defendants do not allege that they were prejudiced by the delay.

¶27. The defendants argue that this Court should affirm the chancellor's dismissal of SW's complaint because SW was not prejudiced by the dismissal. They claim that dismissal under Rule 41(b) is considered a harsh and extreme sanction only because it usually deprives the plaintiff of the opportunity to pursue its claims. Here, however, SW's tax appeals remained pending in circuit court at the time this case was dismissed. In her bench ruling, the chancellor acknowledged this fact and found that SW could attempt to amend its pleadings in the circuit-court proceedings to add the claims that were being dismissed in this case. Thus, the defendants contend that the chancellor's dismissal of this case was proper because SW was not deprived of an opportunity to pursue its claims.

¶28. We find that the defendants have failed to support the above argument with any legal authority. SW's chancery-court case is an original civil action in which SW seeks damages and injunctive relief based on the defendants' alleged violations of their official duties. SW's circuit-court case is an appeal from a decision of the Pike County Board of Supervisors concerning the assessment of ad valorem taxes. In that case, the circuit court is sitting as an

14

appellate body, and a tax refund is the only relief authorized by the statute governing SW's appeal. Miss. Code Ann. § 27-35-121. *See also* **Fondren v. State Tax Comm'n**, 350 So. 2d 1329, 1333-34 (Miss. 1977) (holding that the statute governing appeals of Tax Commission orders assessing property taxes did not provide the plaintiff with an adequate remedy at law for its claim seeking an injunction requiring the Commission to comply with its constitutional duty to equalize property tax assessments among counties). The defendants do not cite any authority supporting the proposition that the two cases could be brought together as a single action. Moreover, dismissal under Rule 41(b) is an adjudication on the merits unless the trial court's judgment specifically states otherwise. **Taylor**, 717 So. 2d at 748. The chancellor's judgment was based on Rule 41(b) and does not specifically state that dismissal was *not* on the merits, so *res judicata* arguably would prohibit SW from reasserting the same claims in a subsequent case. *See* **Hall v. Tower Land & Investment Co.**, 512 F.2d 481, 483 (5th Cir. 1975) (finding plaintiff's complaint barred by *res judicata*, where a prior action involving the same parties and issues had been dismissed with prejudice under Federal Rule of Civil Procedure 41(b)). This argument is without merit.[4]

### C.    Aggravating Factors

¶29.    The presence of aggravating factors is not required to justify dismissal under Rule 41(b), but it may strengthen the trial court's decision to dismiss an action. **Cox**, 976 So. 2d at 876. These factors include "the extent to which the plaintiff, as distinguished from his

---

[4] The defendants also argue that this Court should affirm the chancellor's judgment of dismissal because SW's claims are barred by the Mississippi Tort Claims Act. The trial court did not address this argument when it dismissed SW's complaint, so we decline to address it for the first time on appeal.

counsel, was personally responsible for the delay, the degree of actual prejudice to the defendant, and whether the delay was the result of intentional conduct." ***Days Inn***, 720 So. 2d at 181 (quoting ***Rogers***, 669 F.2d at 320). Neither the trial court nor the defendants addressed this issue. But the record reveals that the delay in the litigation can be attributed to the conduct of SW's attorney, rather than SW personally. "The theme running through the cases involving Rule 41(b) is that negligence or inexcusable conduct on the part of plaintiff's counsel does not in itself justify dismissal with prejudice." *Id.* at 182. In addition, the defendants suffered little if any prejudice because of the delay, as both SW and the defendants believed the case had been continued, both parties failed to appear at trial, and the circuit-court action still was not finalized at the time of trial, which was the justification for the entry of the stay. Finally, we find that SW did not intentionally disobey the chancellor's orders by failing to appear at the motions hearing and at trial.

¶30. After considering the facts of this case in the context of the standard for Rule 41(b) dismissal, we find that the chancery court abused its discretion in dismissing SW's complaint for failure to prosecute. This case does not present a clear record of delay or contumacious conduct by SW, the chancellor did not specifically consider any alternative sanctions, and no aggravating factors exist to support the chancellor's decision. Trial courts possess the authority to impose lesser sanctions when the need arises, but the sanction of dismissal with prejudice should be reserved for egregious cases. This case does not fit into that category.

**CONCLUSION**

16

¶31. For the foregoing reasons, we reverse the judgment of the Pike County Chancery Court and remand this case to the chancery court for further proceedings consistent with this opinion.

¶32. **REVERSED AND REMANDED.**

**KITCHENS, P.J., KING, COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. RANDOLPH, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY COLEMAN AND MAXWELL, JJ.**

**RANDOLPH, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶33. The arguments presented by SW to both the trial court and this Court are a bit dubious, which leads me to question the logic underpinning today's decision. Nonetheless, I acquiesce to the majority opinion *dubitante*, but not *dissentiente*. SW's excuses for failing to file motions for (1) a continuance for a hearing on its own motion to amend, and (2) a "needed" continuance for a trial that it had sought and obtained, as well as SW's "beliefs" about the stay, were rejected by the chancellor. *See* Maj. Op. ¶ 10. SW makes similar arguments before this Court, which are contradicted by the record. The chancellor did not err in rejecting SW's excuses.

¶34. SW claims that the court administrator continued the trial, but the court administrator adamantly claimed that she did not because she lacked authority to do so. The chancellor did not accept SW's contention, a finding that cannot be said to be manifestly wrong or clearly erroneous. "We always review a chancellor's findings of fact, but . . . will not disturb the factual findings of a chancellor when supported by substantial evidence unless [we] can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong,

clearly erroneous, or applied an erroneous legal standard." ***Lane v. Lampkin***, 234 So. 3d 338, 345 (Miss. 2017). The chancellor did not accept SW's contention that it believed a stay was still in effect. The chancellor specifically found that the stay was lifted in February 2015 when SW successfully moved the court for an order setting the case for trial in September, 2015.[5] SW then filed a motion to amend its complaint in May 2015. Next, SW contacted the court administrator seeking a continuance. These actions contradict SW's assertion that it "genuinely" believed a stay was in place, rivaling the dubiety of SW's simultaneous complaints for injunctive relief and monetary damages for the same alleged wrongful conduct.

¶35. Nevertheless, SW is entitled to some relief. The chancellor's bench ruling dismissing SW's complaint is inconsistent with a Rule 41(b) judgment of dismissal. At the second motion hearing on the chancellor's show-cause order, the chancellor ruled from the bench:

> The Court is going to do this; I am going to dismiss these cases. If you want to file amended pleadings in circuit court seeking to expand the relief you seeking [sic], certainly, that is something for the circuit judge to decide. I will dismiss these cases off the docket and let the circuit court handle whatever it is.

¶36. The chancellor orally opined that SW could continue to seek relief, which strongly suggests a dismissal without prejudice.[6] Her bench ruling was within her sound discretion and authority to control the court's docket and dismiss a case, where parties failed to appear

---

[5] Although the defendants agreed to the trial setting, it was on SW's motion. Maj. Op. ¶¶ 7, 24.

[6] A Rule 41(b) dismissal operates as an adjudication upon the merits unless the court in its order for dismissal otherwise specifies. Miss. R. Civ. P. 41(b).

at trial.[7] This failure to appear was attributable to SW, for SW failed to file a motion for a continuance for trial. Further, SW should have filed a motion for a continuance for the hearing on SW's motion to amend its complaint before trial. Leaving a voicemail with a court administrator is no substitute for seeking a court's permission by order. *See* Maj. Op. ¶ 11; *see also* Miss. R. Civ. P. 7(b) ("An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought . . . .") In the absence of an order granting a continuance, SW was required to appear for trial. Indeed, had SW properly appeared for its hearing to amend or filed a motion for a continuance for its motion to amend, or moved for a continuance for trial, it is unlikely that these issues would be before the Court today.

¶37. Unlike the chancellor's bench ruling, the written judgment dismissing the case with prejudice was an abuse of discretion. A dismissal with prejudice was too harsh a sanction, since Rule 41(b) involuntary dismissals with prejudice "are reserved for the most egregious cases." *American Tel. And Tel. Co. v. Days Inn of Winona*, 720 So. 2d 178, 181 (Miss. 1998). The record reveals no consideration of lesser sanctions. "Lesser sanctions include 'fines, costs, or damages against plaintiff or his counsel, attorney disciplinary measures,

---

[7] "Any court of law or equity may exercise the power to dismiss for want of prosecution." *Cucos, Inc. v. McDaniel*, 938 So. 2d 238, 240 (Miss. 2006). "This power, inherent to the courts, is necessary as a means to 'the orderly expedition of justice' and 'the court's control of its own docket.'" *Id.* (quoting *Walker v. Parnell*, 566 So. 2d 1213, 1216 (Miss. 1990)) (citation omitted). "This Court will not disturb a trial court's ruling on a dismissal for want of prosecution unless it finds an abuse of discretion." *Id.* (quoting *Watson v. Lillard*, 493 So. 2d 1277, 1279 (Miss. 1986)).

conditional dismissal, dismissal without prejudice, and explicit warnings.'" ***Manning v. King's Daughters Med. Ctr.***, 138 So. 3d 109, 117-18 (Miss. 2014). Any one of these lesser sanctions would have better served the interests of justice. ***Id.*** at 118. I agree that this case should be remanded for further proceedings.

**COLEMAN AND MAXWELL, JJ., JOIN THIS OPINION IN PART.**